Michael Alan EDDY, Plaintiff–
Appellant,

v.

RADAR PICTURES, INC.; Interscope
Communications, Inc.; Warner Broth-
ers Pictures, Inc.; Edward Zwick;
Marshall Herskovitz; Writers Guild
of America West, Inc., Defendants–Ap-
pellees.

No. 04–56993.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 2006.

Filed Dec. 22, 2006.

James T. Ryan, Esq., Johnson & Rishwain, Los Angeles, CA, for Plaintiff–Appellant.

William L. Cole, Mitchell Silberberg et al, LLP, George R. Hedges, Esq., Quinn Emanuel Urquhart Oliver & Hedges, LLP, Countess C. Williams, Esq., Writers Guild of America West Legal Department, Los Angeles, CA, Anthony R. Segall, Esq., Rothner, Segall & Greenstone, Pasadena, CA, for Defendants–Appellees.

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We note that Eddy also appealed the district court's dismissal of his claim of fraud against

Before: PREGERSON, REINHARDT, and HAWKINS, Circuit Judges.

## MEMORANDUM *

Michael Alan Eddy (Eddy) appeals from the district court's dismissal of his state law claims for breach of contract, fraud, and conspiracy to commit fraud against Radar Pictures, Inc. (Radar), Interscope Communications, Inc. (Interscope), and Warner Bros., Pictures (Warner Bros.),[1] as well as its grant of summary judgment on his action under § 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), in favor of Radar, Interscope, Warner Bros. and the Writers Guild of America, West, Inc.(WGA). We affirm.

■ With respect to his claim for breach of the duty of fair representation, his LMRA § 301 claim, Eddy first argues that the district court applied an incomplete legal standard. Asserting that a participating writer investigation is ministerial in nature, Eddy contends that we should consider whether the WGA acted arbitrarily, not only whether it acted in bad faith or in a discriminatory manner. *See Marino v. Writer's Guild of Am., East, Inc.,* 992 F.2d 1480, 1486 (9th Cir.1993) ("[I]f the [union's] conduct was procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. However, if the conduct involved the union's judgment, then 'the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.' ") (quoting *Burkevich v. Air*

Edward Zwick and Marshall Herskovitz. Prior to the argument in this case, however, Eddy settled his claims with Zwick and Herskovitz. Therefore, we need not address Eddy's claims with respect to these defendants.

*Line Pilots Ass'n,* 894 F.2d 346, 349 (9th Cir.1990)); *see also Wellman v. Writers Guild of Am., West, Inc.,* 146 F.3d 666, 671 (9th Cir.1998) (stating that an arbitrariness standard also applies when a union processes a grievance in a perfunctory manner by treating the "union member's claim so lightly as to suggest an egregious disregard of her rights.") (citations and internal quotation omitted).

Eddy misperceives the nature of the inquiry undertaken by the WGA. A participating writer investigation is the internal process by which the WGA determines whether, on behalf of a writer, to pursue arbitration with a company that has stated that it does not consider him to be a "participating" writer. The company's decision, unless reversed, means that the writer is not eligible to receive screen credit. During its investigation, the WGA evaluates several factors that are critical to whether a claimant is a "participating" writer, including contractual jurisdiction, business continuity, and the creative continuity between two sets of materials or scripts. We conclude that the participating writer investigation is a process involving both judgment and discretion, analogous to a "union's decision to pursue a grievance based on its merits or lack thereof," which is "considered an exercise of judgment." *Stevens v. Moore Bus. Forms, Inc.,* 18 F.3d 1443, 1447 (9th Cir. 1994); *see also Wellman,* 146 F.3d at 671 ("[I]n general, a union's decision about how best to handle a grievance [ ] is a matter of its judgment.") (citation omitted).

Contrary to Eddy's assertion, the CBA, the internal memoranda of the WGA, and prior arbitration decisions do not require or command the WGA to conclude that a WGA member is a participating writer solely because it finds that "business continuity" is present among screenplays. *See, e.g., Writers Guild of Am., West, Inc. v.*

*HBO Indep. Prods., Inc.,* No. 93–CR–23, at 4–9 (1993) (Dern, Arb.) ("Daddy Dearest"); *Writers Guild of Am., West, Inc. v. Paramount Pictures Corp.,* No. 90–CR–16, at 13–16 (1990) (Christopher, Arb.) ("Days of Thunder"); *see also Wellman,* 146 F.3d at 671–72. Nor is the WGA "commanded" by its internal policy and memoranda to count up and follow the conclusions of its expert readers on the issue of creative continuity without evaluating the readers' analyses or exercising its own discretion on that issue, or without considering other relevant factors in the participating writer investigation. *Id.* Thus, the participating writer investigation, including its use of expert readers, is not ministerial in nature, and the arbitrariness standard does not apply.

■ Next, Eddy asserts that the arbitrariness standard applies because the WGA processed his grievance in a perfunctory manner. However, the WGA's exhaustive four-month plus investigation, led by experienced union officials, shows the opposite. Certainly, Eddy is incorrect when he states that the WGA handled his claim "so lightly as to suggest an egregious disregard" for his rights. *Wellman,* 146 F.3d at 671.

■ Having dispensed with the question of arbitrariness, we now apply the bad faith or discrimination standard and hold that Eddy cannot demonstrate that the WGA acted in bad faith or in a discriminatory manner. First, Eddy concedes that the WGA did not act in a discriminatory manner. Second, assuming Eddy's allegations to be true, they fail to establish that the WGA acted in bad faith. Eddy asserts that a WGA official, Sally Burmester, falsely told an expert reader, Richard Kletter, that there was no business continuity between the scripts which the WGA had asked him to evaluate, thereby causing Kletter to vote against Eddy, and turning

a 2 to 1 vote of expert readers in favor of Eddy into a 2 to 1 vote against Eddy.

It is clear from Kletter's own reports and deposition that he misunderstood the role of an expert reader—which is to evaluate *creative* continuity, and not to consider other factors such as business continuity, or to determine if a writer should receive credit—and that Burmester's objective was to ensure that Kletter followed the WGA's specific rules for expert reader reports. In any event, the conversation did not affect Kletter's analysis of creative continuity: that "these two sets of material could not be more different" and that "[t]he differences between the two sets of material overwhelm any superficial similarity of setting and character...." This type of analysis is precisely what the WGA sought from expert readers to aid it in determining whether an arbitrator might conclude that there is sufficient creative continuity for the member to be a participating writer. Contrary to Eddy's contention, the conversation between Burmester and Kletter demonstrates that the WGA carried out its internal investigation in good faith by demanding that expert readers limit their analyses to the assigned function.

Furthermore, although Eddy argues that the strong merits of his grievance are relevant to whether the WGA acted in bad faith in refusing to arbitrate on his behalf, *see, e.g., Zimmerman v. Foundation of the French Int'l Sch. Rochambeau,* 830 F.2d 1316, 1319 (4th Cir.1987) (citing *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)), the fact that two of the three expert readers, Kletter and Mel Frohman, ultimately concluded that there was little similarity between the *Eastern Western* scripts and *The Last Samurai* scripts belies Eddy's claim that his grievance had merit or that the WGA acted in bad faith by failing to pursue a meritorious grievance.

Because Eddy has not demonstrated that the WGA acted either in bad faith or in a discriminatory manner, we hold that the WGA did not breach its duty of fair representation. *Marino,* 992 F.2d at 1486. Accordingly, we affirm the grant of summary judgment on Eddy's § 301 claim.

■ Next, Eddy asserts that the district court erred by concluding that his state law claims for breach of contract and fraud are preempted under LMRA § 301. He is incorrect. Eddy's breach of contract action seeks to implement a provision of an arbitration award, which states that "[i]n the event that principal photography of the project tentatively entitled 'Eastern/Western' is commenced, IS [Interscope] shall pay to the WGA, for the benefit of Eddy, $25,000.00." To resolve Eddy's breach of contract action, it must be determined whether the screenplay or "project tentatively entitled 'Eastern/Western'" is the same screenplay or project as *The Last Samurai,* as Eddy claims. This determination, however, would require the interpretation of "an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute," and, therefore, the claim is preempted by LMRA § 301. *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 693 (9th Cir.2001) (en banc).

As the district court correctly held, the provision of the WGA collective bargaining agreement that is relevant to resolving the dispute over whether the two projects or screenplays constitute the same projects, or whether a screenplay is based on an earlier one, is Theatrical Schedule A, Art. 18, ¶ 9. That provision, which defines when a member is a participating writer, has been interpreted by prior arbitrators to

require a determination of whether two different screenplays are sufficiently similar to be deemed the same screenplay or project. Under the collective bargaining agreement, this determination is made by the WGA during a participating writer investigation or, alternatively, by an arbitrator if the WGA and an employer are in disagreement over participating writer status. Prior arbitration decisions construing the relevant provisions are pertinent to a pending dispute. Here, during the course of its investigation, the WGA applied the terms of Theatrical Schedule A, Art. 18, ¶ 9, and determined that the two projects were not sufficiently similar to be deemed the same screenplay or project. Because Eddy's breach of contract claim required the interpretation of the collective bargaining agreement, we affirm the district court's holding that the claim was governed by and also preempted by LMRA § 301. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Cramer,* 255 F.3d at 693.

■ Finally, we affirm the district court's holding that Eddy's fraud claim is preempted by § 301. As in the breach of contract claim, a central allegation or premise of Eddy's fraud claim is that *The Last Samurai* and *Eastern/Western* screenplays were in fact the same project or screenplay. Thus, the fraud claim is preempted by LMRA § 301 as well. *See Aguilera v. Pirelli Armstrong Tire Corp.,* 223 F.3d 1010, 1017 (9th Cir.2000); *see also Stallcop v. Kaiser Found. Hosp.,* 820 F.2d 1044, 1049 (9th Cir.1987); *Bale v.*

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

*General Tel. Co.,* 795 F.2d 775, 779–80 (9th Cir.1986).

AFFIRMED.