255 F.3d 683 (9th Cir. 2001)
 LLOYD W. CRAMER; DANIEL E. LIPICH, PLAINTIFFS-APPELLANTS,
v.
CONSOLIDATED FREIGHTWAYS INC., DEFENDANT-APPELLEE.
GUILLERMO ALFARO, PLAINTIFF,
AND
DENNIS R. BLEVINS; RAY R. CASIO; STEVE CUNNINGHAM; RICK DEWOODY; ALEJANDRO GARCIA; DAVID V. GARCIA; RAUL C. GARCIA; JAMES A. GRECO; BRUCE A. HARVEY; JOHN K. HATFIELD; ROBERT W. HATFIELD; LEE A. INGRAM; ZENO KING, JR.; JOHN L. LACROIX; GREGORY A. LANDAVAZO; MELVIN LEO LEWIS; ENRIQUE LOPEZ; HERBERT MARCUS; IGNACIO V. OCHOA; BRIAN K. PAGNE; MANUEL PARRA; JAMES A. PROITTE; CARLOS RIVERA; HAROLD JAMES TAYLOR, JR.; THOMAS A. SCOTT; DAVID W. STEPHENS; J.B. STEWART; ALFONSO WAGNER; LARRY A. WELLS; ROBERT P. WILLIAMS; ERIC J. WRIGHT; WILLIAM A. YESFORD; MIGUEL ABARAJAS; SANDRA RAY AMBROSE; GUILLERMO AMESOLA; ABELARDO APUAN; MICHAEL VINCENT ARBANAS; CARLOS ARGANDORA; JOSE ABRIERO; MARCARIO ACELLANO; FERNANDO AVILA; MICHAEL E. BANNAN; ARNOLD A. BARAJAS; ROBERT BARRAS; MIKE BARTLEY; DAVID BARTON; JAN K. BEBER; WILLIAM OTIS BEGGS; CRAIG ANTHONY BERLENE; PAUL EUGENE BOATWRIGHT; BRIGIDO BOLIVAR; RAYMOND BONIA; RICHARD BOON; ROGER J. BRASS; GARY BROOKS; MICHAEL D. BROWN; JOANNE BRUMMER; SCOTT BUBIER;
EDUARDO S. CARDENAS; MANUEL CARDONA; MARIO CARILLO; HARRIS A. CARTER; RICHARD CENICEROS; JACK CLARK; KENNETH L. CLARK; FERNANDO A. CLAVIJO; ROBERT L. CLINTON; RICHARD CONTRERAS; RANCE D. COOPER; ANTHONY CORDERO; ARMANDO CORDERO; JOHN L. CORDERO; RUDY H. COUTHART; CHARLES DAVIDSON, II; THOMAS DERSGHY; PHILIP DIGENOVA; CHARLES DIRNER; JIMMY DIXON; AL DORAME; EDDIE SHEPHERD; CLIFFORD J. FELTON; MIKE FITZGERALD; JOSE LUIS FLORES; RAFAEL O. FLORES; ED FOOR; JERRY FRANCE; ALBERT ALEX FRANCO; RAMON B. FRANCO; MICHAEL GAMBINO; ANTHONY GAPDORA; ROBER T. GARCIA; DONALD K. GLOVER; DAVID P. GOMEZ; MANUEL E. GONZALES; GERALD W. GOODWIN; DEVIN JONATHAN GORDON; JONATHAN J. GORDON; JERRY GOFORTH; BERNAL GREGETZ; JOSE GUTIERREZ; JESSE D. HALEY; JAMES HARPER, JR.; SANDRA HEATLEY; PATRICK L. HERON, JR.; RANDALL WILLIAM HOBBS; NARVELL E. HOOKS; STEVE HOPKINS; TIM HOSEA; GAYLE LYNN HAMPTON; JAMES HURLBURT; JOHN W. JACKSON; JAMES ROBINSON; WILLIAM JARRELL; ALFREDO JIMENEZ; GARY E. JOHNSON; PETER KARABAN; ROBERT M. KIRKLAND; LARRY RISSEL; CARY KNIGHT; ANNE M. KNUTZEN; PATRICK J. KNUTZEN; ERVIN KROLL; FRANK P. LAGUMINA; HERCLIO LEMUS; ELORIA REYES; RICHARD E. LUCERO; ENRIQUE MANCILLA; CLIFFORD E. MAPLES; GUILLERMO MARTIN; REGUIO MARTIN; GILBERT M. MARTINEZ; RONALD A. MATTHEWS; DAVID E. MAY; MICHAEL J. MCCARTHY; DON R. MCCLARY; WILLIAM R. MCFARLAND; SAUL A. MCKECHAN; P.L. MEDINA; PEDRO A. MONGE; ALFRED MONTOYA; ARTHUR MORA; MARCOS MORALES; ROY L. MCFOOT; DEWAYNE MORTENSEN, II; MARK MULHERN; OSCAR MUNOZ; JOHN MURRAY; RAYNO NORDUCCI; HECTOR OCHOA; JORGE OCHOA; MICHAEL O'NEAL; LUIS E. ORTEGA; GILBERT GEORGE ORTIZ; VICTOR PARKER; DAVID PERALES; ISIDRO PERALES; ROBERT PORTILLO; ROBIN J. QUIGLEY; JOSEPH R. QUILTY, II; ROBERT REYNOSO; BRYAN RICHARD; CARLOS OROZCO RIVAS; GILBERT C. RIVERA; HOWARD ROBINSON; AUDIAS RODRIGUEZ; HUGO RODRIGUEZ; RUBEN RODRIGUEZ; TOMAS A. RODRIGUEZ; JOHN ROJAS; JAVIER ROMAN; ARMANDO ROMERO; ROBERT A. ROSAS; EUGENE A. ROSE; FRANCISCO J. RUIZ; C.W. RYAN; CATHERINE SCHATZ; DENNIS SCHATZ; STEVEN SCHILLING; NORMAN W. SCHOOLCRAFT; ERNIE SCOLARI; JOHN P. SOROUSE; JOSEPH SELCHO; JAMES SHINN; NATHAN SHROPSHIRE; RICHARD F. SHUMWAY; DAVID MANUAL SIERRAS; DAVID H. SMITH, JR.; ROBERT P. SMITH; CLARENCE SATTERLAND; JAMES BOBBY L. STONE; ALEJANDRO TIRADO; FABRIZIO TORRES; BRIAN UNZICKER; FRANK VALDEZ; MARIO A. VASQUEZ, JR.; MARIO A. VASQUEZ, SR.; RICHARD J. VARGAS; ALEXANDER VILLA, JR.; GUADALUPE REYES WAGGONER; WAYMOND A. WALKER; ROBERT WELSH; WILLIAM M. WESTON, JR.; ROBERT FRITZ WESTREICHER; JUDY LEN WILSON; GARY WAYNE YATES; DENNA JEAN YASANIA; DONALD RAY YODER; LYLE ARCHIBALD; EWALD BARTH; LEROTY O. BELL; HENRY CAMACHO; NICK J. CARENDER; K.W. CARRITHERS; JOSE CASILLAS; ARMANDO CORONADO; RICHARD COTA; DONALD K. CRONK; RICHARD JOSEPH DIAZ; JACK E. DOBSON; FRANCISCO ESPARZA; JOSE C. FLORES; ERNEST W. FRICK; RUDY GOMEZ; JOSEPH GONZALES; MICHAEL GROOM; JOAQUIN HERNANDEZ; JOHN ALFRED HILL; TERRY L. JOHNSON; OSCAR H. MARTIN; ELY MCDONAGLE; FULTON L. MITCHELL; GRADY RICHARD NUTT; GILBERT ORTIZ, JR.; MICHAEL T. PAUCH; JEFFREY M. PHILLIPS;
MICHAEL R. PRESTON; BILLY C. RATLEDGE; ALFRED G. RODRIGUEZ; GILBERT ROSALES; OLIVER SONJY; JOHN STURGES; DONALD F. WOODS; F. THOMAS THORNE; RONALD M. AUBERT HARVEY GEORGE BEACH; PAUL EDWARD BECKER; HAROLD BURNLEY; KIM HARSHA; JOSEPH CHAVEZ; PAUL E. COX; JOSEPH DEFRANCIS; BILL JOE MCFARLAND; WILLIAM E. MULDOON; JOSE A. UDELL PETERSON; ANDREW SLAUGHTER; AMOS TAYLOR; JIM H. WILLOUGHBY; RICHARD ALVARADO; HENRY H. ANDRADE; GARY A. RAMIREZ; ARMAND S. RAMIREZ; MASAO SHOBE; NOBLE A. CARSON; ERIC G. FROMM; LUE G. GARY; RICHARD ANTHONY LEON; JAMES R. O'NEILL; JERRY STROTHER TODD T. STEVENS, PLAINTIFFS-APPELLANTS,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION, A DELAWARE CORPORATION; CNF TRANSPORTATION, INC., A DELAWARE CORPORATION, AKA CONSOLIDATED FREIGHTWAYS, INC.; MARK EPSTEIN, AN INDIVIDUAL; DOUGLAS SCHUSTER, AN INDIVIDUAL; DOE SECURITY INSTALLATION COMPANY, DEFENDANTS-APPELLEES.
CHARLES R. DAVIDSON, II; GUILLERMO ALFARO; DAVID FITZHUGH; STEVEN B. BUGARIAN; IGNACIO LAWTON; DREW WHEAT; DONALD STUBBLEFIELD, PLAINTIFFS,
AND
THERESA HOFFMAN; MASAO SHOBE, PLAINTIFFS-APPELLANTS,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION, A DELAWARE CORPORATION, AKA CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE; CNF TRANSPORTATION, INC., A DELAWARE CORPORATION, AKA CONSOLIDATED FREIGHTWAYS; MARK EPSTEIN, AN INDIVIDUAL; DOUGLAS SCHUSTER, AN INDIVIDUAL, DEFENDANTS-APPELLEES.
 No. 98-55657, No. 98-56041, No. 98-56154
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted En Banc December 18, 2000--San Francisco, California
Filed June 15, 2001
 
 [Copyrighted Material Omitted]
 Jay Cordell Horton, Malena R. Leclair and Susan Ghormley, Horton, Barbaro & Reilly, Santa Ana, California, for plaintiffs-appellants Cramer et al., and Matthew L. Taylor and Michael D. Myers, Myers, Taylor & Siegel, Claremont, California, for plaintiffs-appellants Alfaro et al. and Hoffman et al.
 Louise Ann Fernandez, Robert E. Mangels, Marc Marmaro, and Neil O. Andrus, Jeffer, Mangels, Butler & Marmaro, Los Angeles, California, and William A. Norris and Edward P. Lazarus, Akin, Gump, Strauss, Hauer & Feld, Los Angeles, California, for the defendants-appellees.
 Appeals from the United States District Court for the Central District of California Irving Hill, District Judge, Presiding* D.C. No. CV-97-07860-IH, D.C. No. CV-98-00331LHM(ANx), D.C. No. CV-98-00332LHM(ANx)
 BEFORE: Mary M. Schroeder, Chief Judge, Harry Pregerson, Stephen Reinhardt, Diarmuid F. O'Scannlain, A. Wallace Tashima, Sidney R. Thomas, M. Margaret McKeown, Raymond C. Fisher, Ronald M. Gould, Richard A. Paez and Richard C. Tallman, Circuit Judges.
 Opinion by Judge Fisher; Concurrence by Judge Tallman; Dissent by Judge O'ScannlainFISHER, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether a plaintiff's state law privacy claim, based on California's penal code, is preempted under §§ 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185. Resolution of this issue, in turn, leads us to clarify our Circuit's approach to §§ 301 preemption. We hold that because plaintiffs' privacy claims are not even arguably covered by the collective bargaining agreement ("CBA"), the claims are independent of the CBA and thus are not subject to §§ 301 preemption. Moreover, we hold that when an employer's surreptitious surveillance constitutes a per se violation of established state privacy laws, the employees affected thereby may bring an action for invasion of privacy regardless of the terms of the collective bargaining agreement governing their employment.
 
 I.
 
 2
 Consolidated Freightways ("Consolidated"), the defendant in this action, is a large trucking company.[1] It concealed video cameras and audio listening devices behind two-way mirrors in the restrooms at its terminal in Mira Loma, California, ostensibly to detect and prevent drug use by its drivers. Employees at the terminal discovered the surveillance equipment when a mirror fell off the men's restroom wall, exposing a camera with a wire leading out through a hole in the wall behind it. Subsequent investigation revealed a similar hole in the wall behind the mirror in the adjoining women's restroom.
 
 
 3
 Under California Penal Code §§ 653n, "[a]ny person who installs or who maintains . . . any two-way mirror permitting observation of any restroom, toilet, bathroom, washroom, shower, locker room, fitting room, motel room, or hotel room, is guilty of a misdemeanor." Thus, Consolidated's installation of the two-way mirror was a direct violation of California criminal law.
 
 
 4
 Soon after discovery of the camera, truck driver Lloyd Cramer, an employee at the Mira Loma terminal, brought a class action suit in state court alleging invasion of privacy on behalf of all "individuals lawfully on the premises . . . who had a reasonable expectation of privacy while using[Consolidated's] restrooms." Guillermo Alfaro, another Consolidated employee, and 281 others brought a separate suit seeking damages for invasion of privacy and infliction of emotional distress. They also sought injunctive relief to end the use of the surveillance devices.
 
 
 5
 Consolidated removed both cases to federal court, contending that plaintiffs' state claims were preempted under §§ 301 of the LMRA because the claims required interpretation of the CBA between Consolidated and its employees' union to determine the employees' reasonable expectations of privacy. The cases were consolidated in the district court (as they have been for purposes of appeal).
 
 
 6
 Consolidated then moved to dismiss both cases, arguing that they were preempted by §§ 301. Cramer moved for class certification, and Alfaro, joined by Cramer, filed a motion to remand for lack of jurisdiction. The district court denied Alfaro and Cramer's motion to remand, granted Consolidated's motion to dismiss Cramer's suit, granted Consolidated's motion to dismiss Alfaro's suit as to all but nine plaintiffs who were not Consolidated employees, remanded the claims of the nine nonemployees to state court and denied Cramer's certification motion as moot. This appeal followed.
 
 
 7
 We have jurisdiction under 28 U.S.C. §§ 1291. We review a district court's finding of preemption under §§ 301 de novo. Audette v. ILWU, 195 F.3d 1107, 1111 (9th Cir. 1999). We reverse.
 
 II.
 
 8
 The history of §§ 301 preemption doctrine is well known, but worth summarizing again to explain how we have arrived at the current state of the law and to provide context for our discussion. As this court has noted, "[f]amiliarity [with the subject matter] has not bred facility." Galvez v. Kuhn, 933 F.2d 773, 774 (9th Cir. 1991).
 
 
 9
 Section 301 is on its face a jurisdictional statute, under which "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. §§ 185(a). Soon after passage of the LMRA, the Supreme Court ruled that §§ 301 authorized the federal courts to develop a federal common law of CBA interpretation. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 451 (1957). The Court subsequently held that this federal common law preempts the use of state contract law in CBA interpretation and enforcement. Local 174, Teamsters of Am. v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962).
 
 
 10
 In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Court expanded application of §§ 301 preemption beyond cases specifically alleging contract violation to those whose resolution "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Id. at 220. Allis-Chalmers involved an employee's suit alleging his employer had handled his claim for disability benefits in bad faith, thereby violating state tort law. Id. at 206. Because the method of handling disability claims was specified in the CBA governing Lueck's employment, the Court interpreted his claim as essentially a recharacterized action for breach of the CBA, and held that it was preempted under §§ 301. Id. at 215 ("[I]t is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis-Chalmers' conduct breached that implied contract provision.").
 
 
 11
 The Court reiterated its test for preemption in Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987). Although acknowledging that "the pre-emptive force of §§ 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization," the Court explained that §§ 301 preempts only "claims founded directly on rights created by collective-bargaining agreements, and also claims `substantially dependent on analysis of a collective-bargaining agreement.' " Id. at 394 (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983) (internal quotation marks omitted); Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)). The Court made clear that the complaints of employees covered by a CBA were not preempted if their claims were unrelated to the terms of the CBA, specifically rejecting the employer's contention that "all employment-related matters involving unionized employees be resolved through collective bargaining and thus be governed by a federal common law created by §§ 301." Id. at 396 n.10 (internal quotation marks omitted). Moreover, the Court held that a defense based on the terms of a CBA is not enough to require preemption: "[A ] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Id. at 399.
 
 
 12
 Attempting to clarify when claims are preempted under §§ 301, Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988), held that states may provide substantive rights to workers that apply without regard to a CBA; a state court suit seeking to vindicate these rights is preempted only if it "requires the interpretation of a collective-bargaining agreement." Id. at 413. In Lingle, the plaintiff's union had filed a grievance alleging discharge without just cause against her employer pursuant to a CBA at the same time the plaintiff had filed a suit in state court for retaliatory discharge. The Court held that the plaintiff's suit was not preempted:"[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the statelaw claim can be resolved without interpreting the agreement itself, the claim is `independent' of the agreement for §§ 301 pre-emption purposes." Id. at 409-10. The Court took pains to note that even if the CBA refers to the state law substantive right at issue, the claim is not preempted so long as it may be litigated without reference to the CBA. "[T]he mere fact that a broad contractual protection against discriminatory -or retaliatory -discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." Id. at 412-13.
 
 
 13
 Finally, Livadas v. Bradshaw, 512 U.S. 107 (1994), summarized and advanced the state of preemption doctrine. Livadas explained:
 
 
 14
 [T]he pre-emption rule has been applied only to assure that the purposes animating §§ 301 will be frustrated neither by state laws purporting to determine "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," nor by parties' efforts to renege on their arbitration promises by "relabeling" as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.
 
 
 15
 In [Allis-Chalmers] and in Lingle . . . we underscored the point that §§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as "independent" of rights under the collectivebargaining agreement (and not whether a grievance arising from "precisely the same set of facts " could be pursued) that decides whether a state cause of action may go forward. Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collectivebargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.
 
 
 16
 Id. at 122-24 (internal citations and footnotes omitted).
 
 
 17
 Based on these principles, Livadas held that because the plaintiff's claim required the court only to "look to" the CBA to determine her rate of pay, there was not even a"colorable argument" for preemption, because her claim was"entirely independent of any understanding embodied in the collectivebargaining agreement between the union and the employer." Id. at 124-25. Even though the Court looked to the CBA to determine the absence of a waiver of state law protections, it concluded that preemption was not required. See id. at 125.
 
 
 18
 The demarcation between preempted claims and those that survive §§ 301's reach is not, however, a line that lends itself to analytical precision. As the Supreme Court acknowledged in Livadas, "[T]he Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in Lingle and [Allis-Chalmers]." Id. at 124 n.18. And little wonder. "Substantial dependence" on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between "looking to" a CBA and"interpreting" it is not always clear or amenable to a bright-line test. See Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108-09 (9th Cir. 2000); Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993). Nevertheless, the interpretive principles the Supreme Court has articulated help guide us through the analytical thicket.
 
 
 19
 If the plaintiff's claim cannot be resolved without interpreting the applicable CBA -as, for example, in AllisChalmers, where the suit involved an employer's alleged failure to comport with its contractually established duties -it is preempted. See also Hechler, 481 U.S. at 861-62.[2] Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA -as, for example, in Lingle, where the plaintiff was able to litigate her retaliation suit under state law without reference to the CBA -it is not preempted. See also Livadas, 512 U.S. at 124-25. The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law,§§ 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense. See Caterpillar, 482 U.S. at 398-99.
 
 
 20
 Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA. A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility.[3] Cf. Livadas, 512 U.S. at 124-25. The argument does not become credible simply because the court may have to consult the CBA to evaluate it; "look[ing] to" the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption. Id. at 125.
 
 
 21
 Where a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the CBA must include "clear and unmistakable" language waiving the covered employees' state right "for a court even to consider whether it could be given effect." Livadas, 512 U.S. at 125 (citing Lingle, 486 U.S. at 409-10 n.9). Thus, a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering §§ 301 preemption.
 
 
 22
 Given this analytical framework, we conclude that several of our Circuit's opinions -all of which were decided before Livadas -state preemption principles that need to be clarified and corrected. In Utility Workers of America, Local No. 246 v. Southern California Edison Co., 852 F.2d 1083 (9th Cir. 1988), we held a union's allegation that an employer's unilaterally instituted drug testing policy violated the California Constitution was preempted because resolution of the claim was substantially dependent on analysis of the applicable CBA; but we went on to suggest that the claim was preempted because it "constitute[d] a properly negotiable subject for purposes of collective bargaining."[4] Id. at 1086. Similarly, in Laws v. Calmat, 852 F.2d 430 (9th Cir. 1988), we upheld dismissal on §§ 301 preemption grounds of an employee's suit challenging his employer's drug and alcohol testing program and his subsequent suspension for failing to participate. We held the testing to be "a working condition whether or not it is specifically discussed in the CBA," and noted that "[a]lthough the manner of discovering employee intoxication is not in the current CBA, the reference to `intoxication' seems to identify this arena as a subject for the collective bargaining process." Id. at 433; see also Schlacter-Jones v. General Tel., 936 F.2d 435, 441 (9th Cir. 1991) (characterizing plaintiff's claim in part as one that "cannot be assessed without examining the CBA to determine whether the Drug Policy was a valid term and condition of employment"); Stikes v. Chevron USA, Inc., 914 F.2d 1265, 1268, 1270 (9th Cir. 1990) (relying in part on Utility Workers and Laws to find privacy claim preempted; stating that "even if the California courts were to find the privacy right non-waiveable, the right is not absolute and its scope would involve consideration and possible interpretation of the collective bargaining agreement."). Taken together, these cases suggest that the preemptive force of §§ 301 is so strong that preemption must occur simply because the state right in question "is a properly negotiable subject for purposes of collective bargaining." Utility Workers, 852 F.2d at 1086.
 
 
 23
 In light of the principles we have reviewed, however, it is clear that this formulation of the standard would expand the scope of §§ 301 preemption far beyond the limits established in Lingle and Livadas, both of which caution against such a sweeping interpretation. See Livadas, 512 U.S. at 122-24 (rejecting the argument that enforcement of a generally applicable state law in cases involving union employees would improperly intrude on the collective bargaining process); Lingle, 486 U.S. at 409-10 (holding that the Illinois law protecting employees against retaliatory termination was not preempted, even though the employer's rationale for firing an employee necessarily related to "working conditions"). Regardless of whether drug testing is a "properly negotiable subject of collective bargaining" in the abstract, the relevant inquiry under Livadas and Lingle should have been whether the resolution of the employee's state law privacy challenge necessarily required interpretation of relevant provisions of the CBA. To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, we today hold such statements to be an incorrect articulation of §§ 301 preemption principles. A state law claim is not preempted under §§ 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.
 
 III.
 
 24
 We turn now to the specifics of the case before us. In arguing in favor of dismissal, Consolidated cites provisions of the CBA it negotiated with the International Brotherhood of Teamsters, Local No. 63, claiming these provisions brought its covert surveillance within the purview of the CBA. Article 26, Section 2 of the agreement forbids the use of camera surveillance for disciplinary reasons except to prove a charge of property theft or dishonesty. The section also specifies the procedure to be employed for the use of videotapes in the context of theft or dishonesty allegations.[5] Article 35, Section 3 discusses alcohol and drug use and the procedures to be employed for drug testing. Consolidated contends that any employee claim based on its covert restroom surveillance requires recourse to these provisions of the CBA to determine the employees' reasonable expectations of privacy. Without such an analysis, Consolidated argues, the court would be unable to determine whether these expectations were violated.
 
 
 25
 As discussed above, we may look to a CBA to determine whether a plaintiff's claim necessarily implicates its terms without "interpreting" the agreement, as that word is used in the context of §§ 301 preemption. See Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1409-10 (9th Cir. 1992); see also Balcorta, 208 F.3d at 1108; Ramirez, 998 F.2d at 748. Doing so here, we find Consolidated's argument unpersuasive. The plaintiffs based their claims on the protections afforded them by California state law, without any reference to expectations or duties created by the CBA. Their claims are neither founded directly upon rights conferred in the CBA nor "substantially dependent upon" interpretation of the CBA terms. Caterpillar, 482 U.S. at 394. Rather, those claims are based on California's constitutional and statutory rights of privacy guaranteed to all persons, whether or not they may happen to work subject to a CBA. Although some such rights of privacy might well be subject to negotiation and be conditioned by the terms of a CBA, that is not the case here. The claims are independent of the CBA and not subject to §§ 301 preemption.
 
 
 26
 Consolidated's insistence that we must refer to the CBA because one provision mentions drug use and another contemplates the use of surveillance videotapes in certain specified circumstances does not change our analysis. Neither of these provisions purports to have any bearing on secret spying on Consolidated's employees in company restrooms -no matter how well-intentioned Consolidated's alleged purpose may have been in doing so. Indeed, the surreptitious nature of the violation of plaintiffs' privacy belies any notion of bargaining or consent to hidden cameras behind two-way mirrors. Consolidated cannot create a dispute as to the meaning of the terms of the CBA by picking out terms that refer to videotapes and drug use, particularly when a cursory examination of those provisions makes clear they apply to a completely different context and set of circumstances.[6] In short, this is a classic example of a defendant's attempt to "inject[ ] a federal question into an action that asserts what is plainly a state-law claim [in order to] transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, 482 U.S. at 399. The Supreme Court has instructed that we are not to reward defendants who engage in such hypothetical exercises. See id.[7]
 
 
 27
 We need not "interpret" the CBA to see that it does not contemplate the surreptitious videotaping plaintiffs challenge in their state law claim. Consulting the CBA reveals the absence of such a provision. The district court's determination that the claim was preempted under §§ 301 was therefore erroneous.
 
 IV.
 
 28
 Even if the CBA did expressly contemplate the use of two-way mirrors to facilitate detection of drug users, such a provision would be illegal under California law, and it is well established in California that illegal provisions of a contract are void and unenforceable. See Hedges v. Frink , 163 P. 884, 885 (Cal. 1917); Holm v. Bramwell, 67 P.2d 114, 117 (Cal. Dist. Ct. App. 1937). Section 653n of the California Penal Code makes the installation and maintenance of two-way mirrors permitting the observation of restrooms illegal without reference to the reasonable expectations of those so viewed. Determination of guilt under the statute is not dependent on context or subjective factors; use of the mirrors is a per se violation of the penal code, and an assumption that the mirrors will not be used is per se reasonable. See In re Deborah C., 635 P.2d 446, 452 n.9 (Cal. 1981); People v. Metcalf, 98 Cal. Rptr. 925, 927 (1971).[8]
 
 
 29
 Under settled Supreme Court precedent, "§§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." AllisChalmers, 471 U.S. at 212; see also Galvez v. Kuhn, 933 F.2d 773, 777 (9th Cir. 1991) (noting that a state prohibition of illegal conduct applies regardless of the terms of a particular contract). Consolidated was therefore required to abide by the provisions of California penal law, and its employees had a right to assume their employer would obey the law.[9] This assumption is inherently reasonable. Indeed, any contrary assumption would be irrational, because illegal behavior is unreasonable. See Miller v. AT&T Network Sys. , 850 F.2d 543, 550 n.5 (9th Cir. 1988) (explaining that criminal behavior is, by virtue of its illegality, per se unreasonable). Even if the CBA purported to reduce or limit this expectation in some way, that reduction would be illegal and therefore unenforceable. Because installation of two-way mirrors is immutably illegal, and freedom from the illegality is a "nonnegotiable state-law right[ ]," a court reviewing plaintiffs' claims that their privacy rights were violated need not interpret the CBA to arrive at its conclusion. Allis-Chalmers, 471 U.S. at 213. By definition, therefore, plaintiffs in this action were reasonable in expecting to be free of the two-way mirrors and hidden video cameras installed in the restrooms.
 
 
 30
 Consolidated argues that, under California law, violation of a right to privacy is necessarily context-dependent; if an individual consents to a certain action, even an invasive one, she cannot then claim her privacy rights were violated by the action. See Stikes, 914 F.2d at 1270. It cannot substantiate this blanket proposition. The cases Consolidated cites in support of its position involved mandatory drug testing in the workplace. See Schlacter-Jones, 936 F.2d at 437; Utility Workers, 852 F.2d at 1085; Laws, 852 F.2d at 433. To the extent the result in any of these cases may have been correct under the law as set forth in today's opinion, that result is irrelevant to the question before us. The conduct at issue here is fundamentally distinct from the imposition of mandatory urinalysis. When companies employ drug testing, the parameters of the tests are often outlined in CBAs so that employees know exactly what to expect. Moreover, drug testing, unlike covert restroom surveillance, is not performed surreptitiously and --most importantly -is not illegal under state law.
 
 
 31
 In any event, Consolidated relies on the expansive language in our earlier decisions which we have today disavowed --indicating that challenges to drug testing must be preempted because drug testing is "a properly negotiable subject for purposes of collective bargaining." Utility Workers, 852 F.2d at 1086. As discussed above, this language is not controlling; indeed, the Supreme Court came to precisely the opposite conclusion in Lingle: "[E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is `independent' of the agreement for §§ 301 purposes. " 486 U.S. at 409-10. That a claim involves an issue theoretically subject to collective bargaining is irrelevant if the specific claim at issue may be resolved without interpretation of the CBA. See Balcorta, 208 F.3d at 1108 n.10.
 
 
 32
 Nor does California state court precedent support Consolidated's argument about the necessarily contextual nature of determinations concerning privacy rights. The California Supreme Court held in Hill v. National Collegiate Athletic Association, 865 P.2d 633 (Cal. 1994), that the NCAA's drug testing program did not violate student athletes' rights to privacy. This holding was based in part on the open and consensual nature of the testing, the complete information about the testing given to the athletes and the opportunity afforded them to refuse to participate. Id. at 26. Nothing in Hill suggests that all privacy determinations turn on issues of consent. Significantly, the court noted that the plaintiffs did not allege the NCAA's program was "contrary to law or public policy."[10] Id., 26 Cal.Rptr.2d 834, 865 P.2d at 660. In this case, conversely, plaintiffs made just such an allegation. Furthermore, their contention is supported by California law. The California Supreme Court has described §§ 653n as "express[ing] a legislative policy against `clandestine observation of public restrooms,' rendering it`reasonable for users thereof to expect that their privacy will not be surreptitiously violated.' " Deborah C., 635 P.2d at 452 n.9 (quoting Metcalf, 98 Cal. Rptr. at 927). Issues of privacy implicated by drug testing programs may well be contextdependent. Issues of privacy implicated by the use of two-way mirrors for surreptitious surveillance are not.
 
 
 33
 Because a CBA cannot validly sanction illegal action, we hold the terms of the CBA were irrelevant to plaintiffs' claim of privacy violation. The district court's finding of preemption was therefore improper.
 
 V.
 
 34
 Alfaro and his co-plaintiffs also alleged a claim of intentional infliction of emotional distress. To demonstrate intentional infliction of emotional distress, a plaintiff must show the defendant's conduct was "extreme and outrageous." Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (applying California law). As we explained in Miller:
 
 
 35
 [Emotional distress] claims may not be preempted if the particular offending behavior has been explicitly prohibited by mandatory statute or judicial decree, and the state holds violation of that rule in all circumstances sufficiently outrageous to support an emotional distress claim. For example, if a plaintiff alleges that an employer's criminal behavior inflicted extreme emotional distress, the emotional distress claim need not be preempted. The behavior could be found sufficiently outrageous to permit recovery without regard to whether the behavior might be permitted under the CBA. Its outrageousness would be clear from the state's decision to make the behavior criminal . . . . Additionally, if the particular CBA does not govern the offending behavior, . . . then an emotional distress claim is not preempted.
 
 
 36
 Miller, 850 F.2d at 550 n.5; see also Galvez, 933 F.2d at 779-80. The conduct at issue here was a violation of California penal law, and therefore per se outrageous. Accordingly, §§ 301 does not preempt the emotional distress claim alleged by Alfaro and his co-plaintiffs to the extent the claim is premised on Consolidated's criminal use of hidden cameras and two-way mirrors in restrooms to conduct clandestine surveillance.
 
 Conclusion
 
 37
 Section 301 does not preempt claims to vindicate nonnegotiable state law rights. Nor does it preempt claims for state law rights that, although potentially negotiable, do not reasonably require the court to interpret an existing provision of a CBA to resolve the dispute. Plaintiffs' privacy claims are therefore not preempted by §§ 301. The Alfaro plaintiffs' claim for intentional infliction of emotional distress is likewise not preempted.
 
 
 38
 Because the state law privacy claims in these cases were not preempted by §§ 301, the district court lacked removal jurisdiction over these actions. They must therefore be remanded to state court.
 
 
 39
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 These actions were initially assigned to Hon. Irving Hill, who entered judgment in Cramer v. Consolidated Freightways, Inc., CV 97-7860-IH, No. 98-55657. Alfaro v. Consolidated Freightways Corp., SA CV 98-331, No. 98-56041, and Davidson v. Consolidated Freightways Corp. (Hoffman), SA CV 98-332-LMG, No. 98-56154, were subsequently reassigned to Hon. Linda H. McLaughlin.
 
 
 [1]
 This case is a consolidation of two separate appeals. In one, Consolidated Freightways, Inc. was the only defendant. The other named Consolidated Freightways Corp., CNF Transportation, Inc. (aka Consolidated Freightways, Inc.), two individuals and a Doe security installation company as defendants. For ease of reference, this opinion refers to the defendants collectively as "Consolidated."
 
 
 [2]
 We note that the Supreme Court recognized in Livadas that where the claim cannot be resolved without interpreting the CBA, "[h]olding the plaintiff's cause of action substantively extinguished may not . . . always be the only means of vindicating the arbitrator's primacy as the bargainedfor contract interpreter." Livadas, 512 U.S. at 124 n.18 (citing Collyer Insulated Wire, Gulf, & W. Sys. Co., 192 N.L.R.B. 837 (1971) (establishing the practice of holding in abeyance NLRB unfair labor practice cases involving interpretation of the CBAs where there is an applicable arbitration clause and requiring that the parties arbitrate any such interpretation question and then return to the Board for adjudication of any remaining legal and factual issues within the Board's jurisdiction)). Because we find that here there is no need to interpret the CBA to resolve the plaintiffs' claims, we do not address under what circumstances a practice of deferring the litigation pending an arbitrator's resolution of the contract interpretation issues rather than extinguishing the claim might be appropriate.
 
 
 [3]
 The dissent's attempt to extract from the CBA's silence on the use of video cameras an implied consent to illegal videotaping from behind twoway mirrors is an example of "creative linkage " that strains credulity. See note 6, infra.
 
 
 [4]
 The complaint also alleged that the employer had violated the CBA, but the privacy claim was based solely on the California Constitution. Utility Workers, 852 F.2d at 1085.
 
 
 [5]
 The relevant section reads as follows:
 The Employer may not use video cameras to discipline or discharge an employee for reasons other than theft of property or dishonesty. If the information on the video tape is to be used to discipline or discharge an employee, the Employer must provide the Local Union, prior to the hearing, an opportunity to review the video tape used by the Employer to support the discipline or discharge. Where a Supplement imposes more restrictive conditions upon use of video cameras for discipline or discharge, such restrictions shall prevail.
 National Master Freight Agreement, Article 26, §§ 2.
 
 
 [6]
 The dissent appears willing to indulge in some unwarranted assumptions to lend credibility to Consolidated's attempt to invoke the CBA to justify its use of hidden cameras in the bathrooms. First, it transforms the CBA's silence on the use of videocameras (as distinguished from the use of videotapes) into an implied consent to secret taping from behind twoway mirrors. Second, asserting that Consolidated positions visible videocameras on its premises, including two "presumably visible" cameras in a different restroom, the dissent imputes to employees a willingness to sacrifice their privacy to secret restroom cameras. As an initial matter, it is not at all clear from the record that we can"presume" the visibility of any cameras Consolidated may have placed in its restrooms. Cramer's counsel stated at oral argument that any other restroom cameras were placed in the ceiling, hidden from view in a fake sprinkler head. In any event, the presence of visible cameras does not imply the expectation of or consent to additional secret cameras. Finally, notwithstanding that the California legislature has explicitly criminalized the use of videotaping through two-way mirrors, the dissent would override that clear statement of California law to indulge Consolidated's creative reading of the CBA. With respect, the dissent's approach illustrates the lengths to which one must go to tease preemption out of the contents of the CBA and plaintiffs' claims here.
 The dissent's reliance on In re Amoco Petroleum Additives Co., 964 F.2d 706 (7th Cir. 1992), is misplaced. There, the video camera was located "in the ceiling of the entrance hallway, which enabled the [employer] to record who entered and left the locker room, and when, but not what they were doing inside." Id. at 707; see also Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1183 (7th Cir. 1993) ("It turned out to be infeasible to conceal the camera in the ceiling outside the locker room pointing toward the door, so instead the company installed it in the ceiling of the locker room itself, though pointing toward the door rather than toward the interior of the room."). Insofar as is apparent from the opinion, Amoco's installation of the camera did not violate any state laws. Id. at 1183 (noting specifically that the employer's action had not been made illegal under Illinois law).
 
 
 [7]
 Even if Consolidated alleged that the plaintiffs' union had waived their state law right to privacy in its negotiation of the CBA, evidence of such a waiver would need to be "clear and unmistakable " before a court could even consider whether to give it effect. See Livadas, 512 U.S. at 125; Lingle, 486 U.S. at 409-10 n.9. The record in this case contains no such evidence.
 
 
 [8]
 Consolidated argues that §§ 653n does not apply because California courts have limited the statute's scope to public restrooms. Consolidated misreads the law. As noted in both Deborah C. and Metcalf, §§ 653n reflects a public policy protecting individuals from surreptitious observation in all restrooms, public as well as private.
 
 
 [9]
 Consolidated argues that the terms of CBAs affecting employees in multiple states should supersede inconsistent state laws. This contention overreaches, however, because the LMRA certainly did not give employers and unions the power to displace any state regulatory law they found inconvenient. See Allis-Chalmers, 471 U.S. at 211-12 ("Nor is there any suggestion that Congress, in adopting §§ 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation . . . . In extending the pre-emptive effect of §§ 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").
 
 
 [10]
 The dissent misapprehends the elements of California's privacy law, relying on Alarcon v. Murphy, 248 Cal. Rptr. 26, 29 (Cal. Ct. App. 1988), a court of appeal case decided before Hill. See Hill, 865 P.2d at 657 (stating elements of invasion of privacy). In any event, as discussed in text and as a careful reading of Hill indicates, Consolidated's videotaping invaded plaintiffs' privacy as a matter of law, thereby satisfying any need to establish both an objective and a subjective expectation of privacy.
 TALLMAN, Circuit Judge, concurring in part and concurring in the judgment:
 
 
 I
 agree with parts I, II, and III of the majority opinion: plaintiffs' claims are not preempted because the CBA did not contemplate surreptitious surveillance of bathrooms through two-way mirrors. However, the Court's alternative holding unnecessarily interprets ambiguous California law and threatens the ability of similarly situated parties to negotiate legitimate limitations on privacy. I respectfully disagree with parts IV and V of the majority opinion
 California law clearly protects individuals from covert observation in certain traditionally private places, such as restrooms and fitting rooms. See Cal. Penal Code §§ 653n. Rather than merely hold that Consolidated's covert actions here were illegal, the Court today holds that even in future contract negotiations, the parties could not reduce privacy expectations in the bathrooms of California workplaces. See Slip Op. at 695-96 ("Even if the CBA purported to reduce or limit this expectation in some way, that reduction would be illegal and therefore unenforceable."). It is not clear to me that California courts would preclude such negotiations between well-represented parties if there were a compelling reason to permit observation. See, e.g., Hill v. NCAA, 865 P.2d 633, 655 (Cal. 1994) ("[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant."); In re Deborah C., 635 P.2d 446, 452 n.9 (Cal. 1981) ("[S]section 653n is limited to a method of hidden spying . . .[not] that restrooms and fitting rooms are immune from all observation.").
 It also appears that the majority's broad statement in its alternative holding threatens multi-state employers' ability to fulfill federally mandated safety requirements by negotiating with their employees. In light of the ambiguity in California law and the fact that we are remanding the claims to state court because the federal courts lack jurisdiction, a more narrow holding by this Court is clearly preferable.
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 
 I
 respectfully dissent from the Court's opinion in this very sensitive application of the federal Labor Management Relations Act ("Act") to a freely negotiated collective bargaining agreement ("CBA") between Consolidated Freightways ("Consolidated") and its union-member employees
 No doubt, the majority is correct in the formulation of the rule we should apply in this case: the plaintiffs' state law claim is preempted under Section 301 of the Act if Consolidated can assert a "reasonable" invocation of a provision of the CBA which makes the resolution of the plaintiffs' claim depend on its interpretation. Majority Opinion at 7523. Such formulation is familiar and is substantially similar to that used in other Circuits. E.g., Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 42 (1st Cir. 1997) ("[S]section 301 preempts a state-law claim wherever a court, in passing upon the asserted state-law claim, would be required to interpret a plausibly disputed provision of the collective bargaining agreement." (emphasis added)); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1181 (7th Cir. 1993) (noting that state law privacy claim was preempted because "it was arguably within the scope of the [collective bargaining] agreement" (emphasis added)). Regrettably, the majority fails in its application of the rule to the CBA at issue in this case.
 Because the CBA expressly provides for video surveillance of its covered employees, it cannot be so cavalierly ignored as the majority holds. Because the CBA can be reasonably interpreted to affect materially the resolution of the plaintiffs' state law claim here, their state law claim is preempted under federal law and therefore I must dissent.
 
 
 I
 
 Remarkably, the majority chooses to reach alternative holdings. In Part III, it concludes, with little elaboration, that Consolidated cannot assert even a reasonable interpretation of the CBA that makes its interpretation necessary to resolve the plaintiffs' claim. Majority Opinion at 7527. ("[A] cursory examination of those provisions makes clear they apply to a completely different context and set of circumstances."). In Part IV, the majority holds that, even if Consolidated could make such an argument, the California Penal Code trumps. Majority Opinion at 7529 ("Even if the CBA did expressly contemplate the use of two-way mirrors to facilitate detection of drug users, such a provision would be illegal under California law . . . ."). Neither holding is compelling.
 
 
 [1]
 
 As to the analysis in Part III, the elements of a right to privacy cause of action under California law require these plaintiffs to show, among other things, 1) that they had a subjective expectation of privacy in the restroom, and 2) that their subjective expectation of privacy was reasonable. Alarcon v. Murphy, 248 Cal.Rptr. 26, 29 (Cal. Ct. App. 1988) ("To determine whether there has been a violation of Alarcon's constitutional right of privacy, we determine whether his personal and objectively reasonable expectation of privacy has been infringed . . . ." (emphasis added)).
 To what sources of information must we look in order to determine, under California law, whether an employee has a subjective and objectively reasonable expectation of privacy? The California Supreme Court tells us this much:"[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." Hill v. NCAA, 865 P.2d 633, 655 (Cal. 1994). And where might have the plaintiffs here had the "opportunit[y] to consent voluntarily " to the videotaping of which they complain? They had such an opportunity every time they entered the terminal in which they were videotaped. The record shows that Consolidated placed no fewer than six signs in and around the terminal housing the restroom which read: "NOTICE! 24 Hour Surveillance Recorded on Videotape." This is hardly irrelevant to their objective and subjective expectations of privacy.[1]
 But more important to the purposes of preemption, the plaintiffs had an "opportunit[y] to consent voluntarily" to the videotaping in the CBA they signed with their employer. In the section entitled "Use of Video Cameras for Discipline and Discharge," the CBA provides:
 The Employer may not use video cameras to discipline or discharge an employee for reasons other than theft of property or dishonesty. If the information on the video tape is to be used to discipline or discharge an employee, the Employer must provide the Local Union, prior to the hearing, an opportunity to review the video tape used by the Employer to support the discipline or discharge. Where a Supplement imposes more restrictive conditions upon the use of video cameras for discipline or discharge, such restrictions shall prevail.
 This provision of the CBA makes explicit two things. First, the plaintiffs consented to be videotaped by Consolidated, subject to the restriction that the videotaping was for the purpose of "discipline or discharge" related to"theft of property or dishonesty." Second, the plaintiffs contemplated that they might want to place additional restrictions on Consolidated's use of video cameras through the mechanism of a"Supplement."[2] A number of "Supplements" were agreed to between the plaintiffs and Consolidated. None of the terms in these "Supplements," however, placed any additional restrictions on Consolidated's use of video cameras.
 What this provision of the CBA does not make explicit is whether Consolidated may use video cameras in the restroom, or whether Consolidated may use video cameras behind a two-way mirror. Of course, nor does it make explicit whether Consolidated may use video cameras in the hallway, or whether Consolidated may use video cameras on a tripod. I do not understand the majority to suggest, however, that a "cursory examination" of the CBA "makes clear" that Consolidated is barred from putting cameras in the hallway or from putting cameras on tripods. This, no doubt, is the case because, although the CBA does not explicitly say that Consolidated may do such things, nor does it explicitly say that Consolidated may not do such things.
 Thus, the contract is silent, as contracts often are, on whether Consolidated's precise behavior is allowed. And, using traditional principles of contract interpretation, one could very easily make a reasonable argument that this silence should be interpreted to mean that the plaintiffs consented to Consolidated's behavior. Such an argument might take the following form: 1) the CBA explicitly places but one restriction upon Consolidated's use of video cameras; 2) the CBA contemplates that additional explicit restrictions might be placed thereupon; 3) no such additional explicit restrictions were ultimately imposed; 4) thus, one could reasonably conclude that the only restriction the CBA imposes on Consolidated's use of video cameras is the one explicitly set forth.[3] Because the contract does not restrict the use of video cameras to areas other than the restroom, or to positions other than behind a two-way mirror, one could reasonably conclude that the plaintiffs in this case consented to the very videotaping on which their state law privacy claim is based. Accordingly, in order to resolve the plaintiffs' state law privacy claim, the Court must resort to interpretation of the CBA to determine whether this reasonable argument is a winning one.[4]
 Not only is there a reasonable argument that the plaintiffs consented in the CBA to the videotaping, but Consolidated's argument in this regard is much stronger than arguments other courts have accepted for the purposes of finding preemption. For example, in a case remarkably similar to this one, the Seventh Circuit held that a suit which alleged that a company had violated state law privacy rights by installing video cameras in a restroom was preempted because the CBA may have authorized the practice, even though there was "not one word in the compact about cameras, locker rooms, or surveillance in general." In re Amoco Petroleum Additives Co., 964 F.2d 706, 709-10 (7th Cir. 1992). The court based preemption on a "management-rights" clause that the company argued left everything "neither regulated nor forbidden" to "its discretion." Id. at 709. The court further noted that several courts had held state law privacy suits over employee drug tests preempted "whether or not the collective bargaining agreement expressly mention[ed] drug tests." Id. at 710. Needless to say, Consolidated's argument regarding the interpretation of the CBA in this case, which does expressly authorize videotaping, is far more plausible than these.[5]
 
 
 [2]
 
 In Part IV, the majority relies on the California Penal Code to conclude that, even if one could reasonably argue that the employees consented in the CBA to Consolidated's videotaping, such consent does not matter. In order to reach this conclusion, the majority must rewrite California law.
 To repeat: the elements of a right to privacy cause of action under California law require these plaintiffs to show two things: 1) that they had a subjective expectation of privacy in the restroom, and 2) that their subjective expectation of privacy was reasonable.[6] Alarcon , 248 Cal.Rptr. at 29. The majority concludes that, because Consolidated's videotaping is presumably a misdemeanor under California Penal Code §§ 653n,[7] any expectation of privacy the plaintiffs had in the restroom was reasonable as a matter of law. Fair enough. But this only establishes the second prong of the required showing; it does not establish the first prong, whether the plaintiffs had a subjective expectation of privacy in the restroom. Before the plaintiffs can establish that, the Court must resort to interpretation of the CBA to determine whether they consented to the videotaping.
 Astonishingly, the majority ignores this first prong altogether. Which perhaps is unsurprising because there simply is no decision of the California Supreme Court which holds as a matter of law that one has a subjective expectation of privacy from illegal intrusions to which one has consented. Moreover, I doubt that there will ever be such a holding of the California Supreme Court. This is likely because, if the California Supreme Court did make such a holding, it would lead to the ridiculous situation in which I could invite someone to videotape me behind a two-way mirror, only to then turn around and sue that person for violating my right to"privacy."
 Nonetheless, this is the interpretation of California law urged upon us by the majority in this case. As support, the majority can only muster the following assertion:"Nothing in Hill suggests that all privacy determinations turn on issues of consent." Majority Opinion at 7531. This is true. Hill never used the word "all." Instead, it used the word"obviously": "[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." Hill, 865 P.2d at 655 (emphasis added). What was "obvious" to the California Supreme Court in Hill should be obvious to everyone else who considers the question: a person's subjective expectation of privacy from an intrusion turns on whether he consented to the intrusion. The majority's conclusion otherwise can only be explained as an attempt to rewrite California law.
 II
 It is clear that the plaintiffs consented in the CBA to video surveillance. It is at least a "reasonable" interpretation of the CBA that the plaintiffs additionally consented therein to video surveillance behind two-way mirrors. Whether this reasonable interpretation is a winning one is a question that can be answered only by interpreting the CBA in the appropriate forum. Therefore, the plaintiffs' state law claim is preempted. This does not mean, of course, that the plaintiffs in this case have no remedy at all. It simply means that the plaintiffs must pursue their remedies under federal rather than state law. Indeed, the plaintiffs in this case submitted their claim to the grievance process provided for in the CBA, and they prevailed. Thus, not only are the majority's efforts misguided, but unnecessary as well. For these reasons, I respectfully dissent.[8]
 
 
 *
 
 Notes:
 
 
 [1]
 In addition, the record indicates that the Riverside County Sheriff's Department investigated the use of video cameras in the men's restroom of Consolidated's facilities and found two additional video cameras in the ceiling in a different men's employees restroom which were not behind two-way mirrors and which were presumably visible. This served to put the plaintiffs further on notice that they may have been subject to videotaping in the restrooms of Consolidated's facilities.
 Curiously, Consolidated's Supplemental Brief asserts that there was a second video camera in the ceiling of the restroom in which the two-way mirror and hidden camera were discovered. Such assertion is belied by the Sheriff's investigation report.
 
 
 [2]
 The term "Supplement" in this provision means a "Supplemental Agreement" setting forth additional terms to"each of the specific types of work performed by the various classifications of employees controlled by this Master Agreement."
 
 
 [3]
 The reporters are replete with cases employing such an interpretative method. E.g., Republic Pictures Corp. v. Rogers , 213 F.2d 662, 665 (9th Cir. 1954) ("[C]courts are loathe to impose limitations or restrictions upon the parties which are not expressly contained in their agreement or which do not arise by necessary implication, and without such implied restrictions the contract could not be effectively performed . . . ."); see also Margaret N. Kniffin, 5 Corbin on Contracts §§ 24.28 (Revised Ed. 1998) ("If the parties in their contract have specifically named one item . . . a reasonable interpretation is that they did not intend to include other, similar items not listed.").
 
 
 [4]
 The majority apparently feels that this legal effort to determine whether there is a reasonable argument that the plaintiffs consented in the CBA to the videotaping is beside the point because it instead relies on the surmise that "the surreptitious nature of the violation of plaintiffs' privacy belies any notion of bargaining or consent to hidden cameras behind two-way mirrors." Majority Opinion at 7527. By this statement, I understand the majority to be surmising that Consolidated would not need to hide cameras behind a two-way mirror if it truly thought that the plaintiffs had consented to the videotaping. With all due respect to the majority, our job is not to engage in dubious surmises about the thoughts of the parties, but, rather, to engage in the traditional legal analysis to be followed in section 301 preemption cases like the one before us.
 At another point, the majority also appears to argue that the plaintiffs' state law rights can be preempted only by a "clear and unmistakable" waiver, rather than a "reasonable" argument regarding waiver, in the CBA. Majority Opinion at 7523, 7528 n.7. This would be the case, however, only if the plaintiffs' state law rights were"nonnegotiable." The Supreme Court made this clear in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988). The state law right at issue in Lingle, freedom from retaliatory discharge, was "nonnegotiable, " id. at 407 n.7, because "under [state] law, the parties to a collective-bargaining agreement may not waive the prohibition against retaliatory discharge," id. at 409 n.9. Thus, "[b]efore deciding whether such a state-law bar to waiver could be pre-empted under federal law by the parties to a collective-bargaining agreement, we would require `clear and unmistakable' evidence in order to conclude that such a waiver had been intended. " Id. at 409 n.9 (citations omitted). There is no "state-law bar to waiver " of the right to privacy in California. To the contrary, the California Supreme Court has held that the right to privacy can be extinguished by consent:"[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." Hill, 865 P.2d at 655.
 
 
 [5]
 The majority's attempt to distinguish these cases is non-responsive. Majority Opinion at 7527-28 n.6. The fact that the videotaping in these cases was not done, as far as we know, in violation of state criminal laws cannot save the majority's holding in Part III of its opinion. As I understand Part III, the majority holds that, without even considering the California criminal law, Consolidated cannot make a reasonable argument that the plaintiffs consented in the CBA to its videotaping. The majority does not invoke the California criminal law until its holding in Part IV of its opinion, which, as explained below, is deficient for separate reasons.
 
 
 [6]
 The majority appears to argue that the elements of a right to privacy cause of action under California law do not require the plaintiffs to show that they had a subjective expectation of privacy in the restroom. Majority Opinion at 7531-32 n.10. The majority appears to suggest that this is the case because Hill altered the elements recited in Alarcon. Id. I respectfully disagree. Nowhere in Hill did the Supreme Court state that it was overruling the understanding in Alarcon. Moreover, although Hill did not use the phrase "subjective expectation of privacy," it included as the second element of the cause of action "a reasonable expectation of privacy on the plaintiff's part." Hill, 865 P.2d at 655. I take this to mean that the plaintiff must show both that he had an expectation of privacy and that it was reasonable. This view is confirmed by the fact that the Court explained this element by noting that "the presence or absence of opportunities to con sent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." Id. Indeed, in fashioning the elements of the right to privacy under the California Constitution, the Supreme Court drew upon both the California common law right to privacy and the federal constitutional right to privacy, id. at 848-53, both of which include a subjective expectation of privacy as one of their elements. Id. at 849-50 ("The plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of the defendant."); California v. Greenwood, 486 U.S. 35, 39 (1988) ("[T]he Fourth Amendment [is violated] only if respondents manifested a subjective expectation of privacy . . . that society accepts as objectively reasonable.").
 
 
 [7]
 It is far from clear whether Consolidated's videotaping violated §§ 653n. The majority assumes arguendo in Part IV that there is a reasonable argument that the plaintiffs consented in the CBA to the videotaping, but it nonetheless holds that the videotaping was illegal. In doing so, the majority extends California law in a manner that appears to contradict decisions by the California Supreme Court. Although the text of §§ 653n does not limit liability to "non-consensual" viewing, the California Supreme Court has appeared to do just that. In People v. Triggs, 506 P.2d 232 (Cal. 1973), the Supreme Court held that a criminal defendant had a reasonable expectation of privacy in a restroom on account of §§ 653n. Id. at 238. In a subsequent decision, however, the Supreme Court clarified that Triggs extended only to "clandestine, unexpected" viewing. In re Deborah C., 635 P.2d 446, 452 (Cal. 1981) (emphasis added). The Court based this clarification on the fact that "section 653n is limited to a method of . . . clandestine observation" and"implies no belief that restrooms and fitting rooms are immune from all observation." Id. at 452 n.9 (internal quotation marks omitted). Thus, it appears that one of the modes of "observation" from which §§ 653n does not make the plaintiffs "im mune" is an "expected" viewing from behind a two-way mirror. Such a viewing would be "expected" if the plaintiffs consented to it in the CBA. Indeed, to interpret §§ 653n otherwise (i.e., in the manner advanced by the majority) would allow the State to prosecute criminally someone who erects a two-way mirror at the invitation of the person he is videotaping!
 In addition to the reasonable argument that the plaintiffs consented in the CBA to Consolidated's viewing, there are other facts which suggest that Consolidated's viewing was not "unexpected " to the plaintiffs, and, therefore, not in violation of §§ 653n. As already noted, Consolidated placed no fewer than six signs in and around the terminal in which the plaintiffs were videotaped that read: "NOTICE! 24 Hour Surveillance Recorded on Videotape." Moreover, there were two other video cameras in another restroom which were not behind two-way mirrors and which were presumably visible.
 Finally, it is not surprising that following the Sheriff's investigation referred to in footnote 1, the Riverside Country District Attorney decided not to file any criminal charges against Consolidated, stating that "the conduct involved was not motivated by an intent that would warrant criminal prosecution."
 
 
 [8]
 I also dissent from Part V of the Court's opinion. The majority rests its conclusion in this Part on our decision in Miller v. AT & T Network Systems, 850 F.2d 543 (9th Cir. 1988). But, in Miller, regarding the tort of intentional infliction of emotion distress, we said: "Because the tort requires inquiry into the appropriateness of the defendant's behavior, the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable. Actions that the collective bargaining agreement permits might be deemed reasonable in virtue of the fact that the CBA permits them." Id. at 550. Only if "the particular CBA does not govern the offending behavior . . . [will] an emotional distress claim [not be] preempted." Id. at 550 n.5.
 
 
 *
 As explained above, there is a reasonable argument that the CBA governs Consolidated's behavior in this case, and, therefore, the plaintiffs' intentional infliction of emotional distress claim is preempted as well. Moreover, even if Consolidated's behavior constituted a misdemeanor under California law, which, as I noted above, is doubtful, it would not foreclose preemption: "we cannot assume that the employer's behavior was outrageous for purposes of an emotional distress claim just because the employer may have violated a statutory prohibition . . . ." Id. at 551.