**John K. LAWS, et al.,
Plaintiffs–Appellants,**

v.

**CALMAT, Defendant–Appellee.**

**No. 87–6150.**

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 4, 1988.

Submitted May 4, 1988.

Decided July 12, 1988.

Richard A. Weinstock, Ventura, Cal., for plaintiffs-appellants.

James A. Zapp, Deborah A. Sudbury, Paul, Hastings, Janofsky & Walker, Santa Monica, Cal., for defendant-appellee.

Before ALARCON, FERGUSON and BEEZER, Circuit Judges.

FERGUSON, Circuit Judge:

John K. Laws ("Laws") appeals the district court's denial of his motion to remand to state court the lawsuit he initiated against his employer, Calmat Corporation ("Calmat"). In addition, he appeals the district court's grant of summary judgment to Calmat. Laws argues that his right to privacy under the California State Constitution was violated by Calmat's mandatory drug testing program. Laws argues that reversal is required because the district court erroneously found that his state law claim is preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, section 3102 of the Motor Carrier Safety Act ("MCSA"), 49 U.S.C. § 3102, and the United States Department of Transportation Regulations ("DOT regulations") promulgated under the authority of the MCSA. We affirm the district court.

I.

Laws, a member of the Chauffeurs, Teamsters and Helpers Union Local No. 186 ("Union"), is employed by Calmat as a "concrete mixer-driver." Calmat operates a building products and production facility in Oxnard, California. The Union and Calmat are parties to a collective bargaining agreement ("CBA") governing the terms and conditions of employment for Calmat drivers, including Laws.

On October 1, 1986, Calmat unilaterally implemented a "Drug and Alcohol Policy" which requires, *inter alia*, urinalysis testing of all current and prospective driver and non-driver employees (1) at all physical examinations required by Calmat and (2) at the discretion of a supervisor whenever any employee is involved in a work-related accident or injury, or when the physical condition of an employee is "in doubt." Employees are expected to consent to testing "as a condition of continuing employment." Refusal to be tested results in immediate suspension of the employee. A positive test will result in disciplinary action up to and including discharge.

On April 2, 1987, Laws went to a Calmat physician for a physical examination in connection with renewal of his Class II driver's license. Class II licenses are subject to federal regulation by the MCSA. DOT regulations require a physical examination, including urinalysis, for renewal of a Class II license. 49 C.F.R. 391.41–391.49. Laws declined to submit to a urine test at his Calmat physical and was suspended without pay for thirty days. He was informed by Calmat that a second refusal would result in his termination. Laws claims that his private doctor performed a urinalysis examination and that the result was negative. Apparently, Laws took a urinalysis test on April 28, 1987, was medically certified for his Class II driver's license, and returned to work on May 1, 1987.

Laws did not attempt to grieve his dispute concerning his suspension or Calmat's drug and alcohol policy. There is in fact no indication that he ever contacted the Union regarding the drug testing requirement or his own case. Instead, on April 22, 1987, Laws filed a class action suit in state court on behalf of himself and all Calmat employees. Laws sought to enjoin Calmat's testing program on the grounds that the policy of testing all employees—regardless of whether or not they were suspected of drug or alcohol abuse—was in violation of Laws' and all Calmat employees' right to privacy as set forth in Article I, Section 1 of the California State Constitution. Laws did not pray for damages resulting from his suspension but only sought declaratory and injunctive relief.

On April 27, 1987, Calmat removed this action to federal court on grounds of federal question subject matter jurisdiction. The district court concluded that it had jurisdiction pursuant to section 301 of the LMRA, 29 U.S.C. § 185, section 3102 of the MCSA, 49 U.S.C. § 3102, and the DOT regulations promulgated under the authority of the MCSA. The district court then granted summary judgment for Calmat on the grounds that, pursuant to section 301 of the LMRA, Laws' proper remedy was

through the grievance and arbitration provisions in the CBA. Moreover, the court found that Laws' state law claim conflicted with the DOT regulations and, therefore, failed under the Supremacy Clause of the United States Constitution. No findings were made regarding sections 7 and 8 of the National Labor Relations Act ("NLRA").[1] Laws timely appealed. This court has jurisdiction under 28 U.S.C. § 1291. We review de novo both the denial of a motion to remand an action to state court for lack of removal jurisdiction and the grant of a motion for summary judgment. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 996 (1987).

## II.

■ Laws argues that the district court erred in finding that his state cause of action was removable pursuant to section 301 of the LMRA. He asserts that his claim is wholly independent from the CBA between the Union and Calmat and, therefore, does not implicate section 301. Thus, he argues, remand is proper. This circuit recently considered and rejected a similar argument in *Utility Workers of America v. So. Cal. Edison Co.,* 852 F.2d 1083 (9th Cir.1988).

In *Utility Workers,* Southern California Edison ("SCE") implemented a random employee drug testing program without first negotiating with Local 246, the collective bargaining agent for represented employees. Two plant employees and Local 246 filed an action in state court alleging that SCE's drug testing program violated their California state constitutional rights to privacy and freedom from unreasonable searches and seizures. *Id.* at 1085. SCE

removed the case to federal court where the state claims were dismissed as preempted by section 301. *Id.* at 1085. On appeal, this court affirmed the district court's dismissal of Local 246's state constitutional claims. *Id.* at 1088.

This court first repeated the now familiar proposition that the preemptive effect of section 301 of the LMRA [2] is so powerful that for the purposes of the well-pleaded complaint rule it will transform state claims into federal ones. *Id.* at 1085.[3] Thus, if an employee attempts to escape application of section 301 by alleging only state law violations—when in fact the claims implicate the CBA—the employee will be subject to the artful pleading doctrine, which "requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed to federal court and adjudicated under the appropriate federal law." *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1472 (9th Cir.1984). In this way, an employee subject to a CBA will not be able to avoid the application of federal laws by filing only state claims.

In *Utility Workers,* we applied the following test for determining whether to uphold federal preemption of state claims:

> [W]hen resolution of a state-law claim is *substantially dependent upon* analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law.

*Utility Workers,* at 1086 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985)) (emphasis added). We concluded

---

1. Section 7 identifies protected or arguably protected employee activity, 29 U.S.C. § 157, and section 8 enumerates certain "unfair labor practices" which are illegal if engaged in by management, § 8(a), or labor, § 8(b), 29 U.S.C. § 158. The question of whether the National Labor Relations Board ("NLRB") has exclusive jurisdiction over this dispute is raised by both parties on appeal.

2. Section 301 provides in pertinent part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may

be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185.

3. This complete preemption reflects the goals of national labor laws, which were enacted to avoid the application of inconsistent state laws and thus ensure the integrity of both the collective bargaining process—and any agreement the process produces. *See e.g., Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed. 2d 206 (1985).

that Local 246's constitutional claims were "substantially dependent" upon analysis of the CBA. Specifically, we noted the articles in the CBA which recognized SCE's right to manage the plant, direct the work force and implement safety rules. *Utility Workers*, at 1086. Because the union's state constitutional claims could not be resolved without considering the CBA we affirmed the district court's dismissal of those claims. *Id.* at 1087.

Applying the test to the present case, we must hold that Laws' claim is also "substantially dependent upon" the Calmat–Union CBA. Laws' conditions of employment are governed by the CBA. A drug and alcohol testing program, upon which all employees' continued employment depends, is a working condition whether or not it is specifically discussed in the CBA. Moreover, Laws' state law claim arises out of his suspension and threatened discharge. Calmat stated the reason for Laws' suspension as "insubordination" for refusing to take the urinalysis test. Under Article IX, Section 1 of the CBA, "[a]n employee may be discharged or disciplined for ... insubordination" and may protest through the grievance and arbitration procedures any punishment considered unjustified. In addition, Calmat and the Union have previously agreed and included in the CBA that "intoxication" due to drugs or alcohol is grounds for "discharge or disciplinary layoff." Although the manner of discovering employee intoxication is not in the current CBA, the reference to "intoxication" seems to identify this arena as a subject for the collective bargaining process—not the courts. Thus, Laws' alleged state claim should be treated as an "artfully pled" section 301 claim.[4] *See Utility Workers*, at 1087.

Contrary to Laws' assertion, *Caterpillar Inc. v. Williams*, — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), does not require a different result. Laws cites the following language to support his position:

Section 301 does not ... require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by ... § 301.... Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301.

*Id.* 107 S.Ct. at 2432 n. 10. Laws further notes that the Court wrote:

When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendants option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Id.* at 2433 (emphasis in original). Laws concludes that, like the plaintiff in *Caterpillar*, he "chose" not to assert any claims he might have had under the CBA and Calmat cannot "inject" a federal question into the action to justify removal.

Such reliance is misplaced. In *Caterpillar*, union-represented employees brought an action in state court against their former employer for breach of individual employment contracts. The employees alleged that when they were in non-union management positions—prior to representation by a union—Caterpillar made oral and written promises of their continued employment in the event of a plant closure. Subsequently, Caterpillar downgraded the employees to positions covered by a CBA. The employees asserted that Caterpillar assured them the downgrades were only temporary. When the plant closed and the employees had been notified they had been

---

4. We also reject Laws' argument that his Union cannot bargain away his right to be free from mandatory drug testing. In *Utility Workers* we wrote that "[d]rug testing does not implicate the sort of 'nonnegotiable state-law rights' that preclude preemption under section 301.... The question of drug testing obviously implicates important personal rights. To the best of our knowledge, however, no court has held that the right to be free from drug testing is one that cannot be negotiated away, and we decline to make such a ruling here." At 1086 (citations and footnote omitted).

laid off, they brought suit in California state court to challenge breaches of the contracts formed by Caterpillar's promises made to the employees when they did not belong to a union.

Caterpillar then removed the case to district court based upon section 301 preemption. After the district court dismissed the action, we reversed. The Supreme Court affirmed our decision, holding that although the employees belonged to a union at the time the plant closed and *could* have asserted rights under the CBA, the employees' allegations arose from breach of *"individual* employment contracts with them." *Id.* at 2431 (emphasis in original). Their rights under these individual contracts, therefore, were wholly separate from any rights derived from a CBA.

Unlike the employees in *Caterpillar,* Laws was a union-represented employee at all times relevant to his claim. Moreover, as discussed above, his complaint arises from dissatisfaction with a working condition and disciplinary measures taken when he refused to conform to that condition. Thus, his "rights" are not wholly separate from the CBA, but are inextricably intertwined with it.[5] *See Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. The district court therefore correctly determined that Laws' state cause of action implicated his CBA and could be removed to federal court.[6]

---

**5.** Our holding is consistent with the Supreme Court's recent decision in *Lingle v. Norge Division of Magic Chef, Inc.,* — U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Although the Court reaffirmed the proposition that the NLRA will preempt state law claims requiring interpretation of a CBA, it added that § 301 "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at —, 108 S.Ct. at 1883. The employee's cause of action in *Lingle* alleged violation of a well-established and recognized tort provided to workers under Illinois law. *Id.* at — – —, 108 S.Ct. at 1881–82. Not only had the state courts interpreted the state's Workers' Compensation Act to apply to employees who are parties to a CBA, the Illinois courts also set forth the specific factual questions for review of such claims. *Id.* The California courts have not applied in a published opinion the California constitutional right of privacy in a drug-testing context. Thus Laws' claim is not an established or recognized state

## CONCLUSION

■ Removal of Laws' lawsuit based on complete preemption by section 301 of the LMRA was proper. Since Laws failed to exhaust his administrative remedies as established in the CBA, we affirm the district court.

AFFIRMED.

---

law claim. Moreover, in the instant case, we believe Laws' claim is inextricably intertwined with his CBA. *See id.* at —, 108 S.Ct. at 1884 ("judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements").

**6.** The district court declared Laws' action preempted under the DOT regulations as well as section 301 of the LMRA. We do not address Laws' argument regarding the supremacy of the DOT regulation since its resolution would not change the result that Laws' claim was properly removed under section 301.

Moreover, we do not address the issue of whether the NLRB has exclusive jurisdiction of Laws' complaint such that his state court jurisdiction must be displaced. Because Laws did not exhaust available administrative procedures, we cannot consider the NLRB question "even if [the federal district court] shares jurisdiction with the NLRB." *Utility Workers,* 1088.