**Kerry L. ROBINSON, Plaintiff,**

v.

**FRED MEYERS STORES, INC.; United Food & Commercial Workers Local Union 99, Defendants.**

**No. CV–01–0353–PHX–ROS.**

United States District Court,
D. Arizona.

July 11, 2002.

Rosval Ardis Patterson, Patterson & Associates PC, Phoenix, AZ, for Plaintiff.

William Porter Allen, Gregg Jay Tucek, Sherman & Howard LLC, Phoenix, AZ, for Defendant.

## AMENDED ORDER

SILVER, District Judge.

Pending before the Court are Defendant Fred Meyers Stores, Inc.'s ("Fred Meyers") Motion for Partial Judgment on the Pleadings (Doc. # 15), Plaintiffs Request for Leave of Court to Amend Complaint (Doc. # 16), and Plaintiffs Motion to Continue Plaintiffs Response to Defendant's Motion for Partial Judgment on the Pleadings (Doc.# 19). For the reasons set forth below, the Court will: (1) grant Plaintiffs Request for Leave of Court to Amend Complaint; (2) deny as moot Plaintiffs Motion to Continue Plaintiffs Response to Defendant's Motion for Partial Judgment on the Pleadings; and (3) grant Fred Meyers' Motion for Partial Judgment on the Pleadings.

### Factual Background

Plaintiff Kerry Robinson was hired by Smitty's Super Value in December 1987. (Plaintiffs Second Amended Complaint ("SAC") ¶ 18). Through a series of mergers with other companies, Robinson was ultimately employed by Fred Meyers as a cashier during the period in question. (SAC ¶¶ 18–22). Plaintiff was employed under, and subject to, the terms of a collective bargaining agreement ("Fred Meyers CBA") during her entire term of employment with the various companies, from December 1997 until her termination on November 5, 1999. (Id.¶ 22). The Fred Meyers CBA terms regarding substance abuse were effective during the period in question, which Plaintiff agrees governed her employment. (Id.)

On October 21, 1999, supervisory personnel at Fred Meyers summoned Plaintiff to the store security office and instructed her to go to a local medical center. (SAC ¶¶ 24–25). It was explained to Plaintiff that she was being sent there for the purpose of providing the medical center staff with a urine sample for drug and alcohol testing. (*Id.*). Plaintiff objected to the test, asserting that it was unwarranted and in violation of her rights. (*Id.* ¶ 26). Plaintiff alleges that in the same meeting, Fred Meyers' managers "probed her personal beliefs, her attitudes toward her person, her bodily functions, and her right to privacy." (*Id.*). She eventually provided the necessary sample, which allegedly indicated drug use. (Id.¶¶ 27–30). On November 5, 1999, Fred Meyers terminated Plaintiff. (*Id.* ¶¶ 30, 42).

In her Complaint, Plaintiff alleges that she did not then and does not now take drugs. (SAC ¶ 33). She argues that decongestant medication could have accounted for the traces of amphetamines found in the sample. (Id.¶ 35). Furthermore, Plaintiff alleges that Fred Meyers' substance abuse policy differed from that of Smitty's and her other previous employers. (*Id.* ¶ 37). The terms of the previous policies purportedly called for a 30–day suspension for the same violation, with continued random drug testing of the violator upon reinstatement. (*Id.*). Plaintiff also objects to the alleged protracted process of disclosure of the results of the drug test after her termination. (*Id.* ¶¶ 31–32).

Plaintiff filed a grievance with the United Food & Commercial Workers Local Union 99 ("Union") for a wrongful discharge in violation of the Fred Myers CBA, and the Union responded to her grievance through its normal processes. (SAC ¶ 44). The pleadings do not indicate what was the outcome of the initial grievance process, but a subsequent communication from the Union suggests that her grievance was denied. (*See* 12/15/00 Union Resp. Letter, attached to Doc. # 30). Plaintiff appealed that decision on October 2, 2000.

On December 15,2000, the Union's Executive Board declined to pursue Plaintiffs grievance to arbitration, and she then filed the instant action. (Id.).

### Procedural History

On February 23, 2001, Plaintiff filed a Complaint (Doc. # 1) against Fred Meyers, alleging the following nine claims: (1) sex discrimination; (2) wrongful termination in violation of public policy; (3) breach of implied covenant of good faith and fair dealing; (4) invasion of privacy; (5) intentional infliction of emotional distress; (6) a second count of intentional infliction of emotional distress; (7) breach of contract; (8) breach of duty of fair representation; and (9) violation of due process. On March 26, 2001, Plaintiff filed an Amended Complaint (Doc. # 2) adding Union as a defendant.

Union filed an Answer (Doc. # 5) to Plaintiffs Amended Complaint on April 23,2001. Fred Meyers filed an Answer (Doc. # 6) to Plaintiff s Amended Complaint on April 27,2001. On July 25, 2001, Fred Meyers filed a Motion for Partial Judgment on the Pleadings ("Rule 12(c) Motion") (Doc. # 15), seeking dismissal of all of Plaintiff's state law claims.

Plaintiff requested leave of Court to file a Second Amended Complaint on July 27,-2001.[1] Fred Meyers filed a Response (Doc. # 18) on August 8,2001, opposing the filing, but requesting that its Rule 12(c) Motion be considered as directed toward the Second Amended Complaint should the Court grant Plaintiff leave to amend. (Resp. at 1).

---

1. In her Second Amended Complaint, Plaintiff deleted one intentional infliction of emotional distress claim and the due process claim, leaving a total of seven claims.

■ On August 17, 2001, Plaintiff filed a Motion to Continue Plaintiffs Response to Defendant's Motion for Partial Judgment on the Pleadings ("Rule 56(f) Motion") (Doc. # 19)[2] with an accompanying affidavit sworn by counsel for Plaintiff (Doc. # 20). Plaintiff sought the continuance of her time to respond to allow for discovery of the Fred Meyers CBA pursuant to Fed.R.Civ.P. 56(f). On September 4, 2001, Fred Meyers filed an Opposition (Doc. # 21) to Plaintiff s Rule 56(f) Motion alleging that no discovery was necessary because the motion could be resolved solely on the pleadings. (Opp'n at 1). On September 16,2001, Plaintiff filed a Reply (Doc. # 24), and after receiving a copy of the Fred Meyers CBA, she filed Plaintiffs Response to Defendant's Motion for Partial Judgment on the Pleadings (Doc. # 30).

## Discussion

### I. PLAINTIFF'S REQUEST FOR LEAVE OF COURT TO AMEND COMPLAINT

Pursuant to Fed.R.Civ.P. 15(a), Plaintiff filed a Request for Leave of Court to Amend Complaint ("Motion to Amend"), seeking to amend her Amended Complaint. A party may amend a complaint with the written consent of the adverse party or, in the alternative, by leave of the court. Fed.R.Civ.P. 15(a). "Leave to amend shall be freely given when justice requires." *Id.* Fred Meyers does not oppose Plaintiffs filing of a second amended complaint *so* long as the Court will consider its Rule 12(c) Motion as directed at that complaint. (Def.'s Resp. at 1). Union did not respond to Plaintiffs Motion to Amend. Given Fred Meyers' conditional lack of opposition, Union's failure to respond,[3] and the strong policy of deciding cases on their merits, *see Martinez v. Newport Beach City,* 125 F.3d 777, 785 (9th Cir.1997), the Court will grant Plaintiffs Motion to Amend. In addition, the Court will consider Fred Meyers' Rule 12(c) Motion as directed toward Plaintiffs Second Amended Complaint.

### II. PLAINTIFF'S MOTION TO CONTINUE PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

On August 17, 2001, Plaintiff filed a Motion to Continue Plaintiffs Response to

**2.** Plaintiff urges in her Rule 56(f) Motion that additional discovery, to allow for production of the Fred Myer CBA, is required for Plaintiff to adequately respond to Fred Meyers' Rule 12(c) Motion. Plaintiff implicitly argues that such an inquiry would go beyond the pleadings and would convert the Rule 12(c) Motion into one for *summary* judgment pursuant to Rule 56. Rule 12(c) and 12(b) motions are "functionally identical" and, therefore, the same standards are generally applicable to Rule 12(c) motions as are applicable to Rule 12(b) motions. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989). When material outside the pleadings is considered, a 12(c) motion is converted to one for summary judgment. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990)(applying this conversion standard to a rule 12(b)(6) motion). The Ninth Circuit has specifically held that a document is not considered "outside" the pleadings "if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). Here, Plaintiffs Second Amended Complaint makes specific reference to the collective bargaining agreement, and neither party has questioned the authenticity of the agreement as the one appropriately governing the conduct in question. (*See, e.g.,* SAC ¶¶ 22, 37, 40, 43–45). As such, reference to and usage of the Fred Myers CBA does not convert Fred Meyers' Rule 12(c) Motion into one for summary judgment.

**3.** *See* Rules of Practice of the United States District Court for the District of Arizona, Rule 1.10(i).

Defendant's Motion for Partial Judgment on the Pleadings ("Rule 56(f) Motion"). In that motion, Plaintiff sought a continuance to provide time for discovery of the Fred Meyers CBA, arguing that it was indispensable to Plaintiffs ability to properly fashion a response to Fred Meyers' Rule 12(c) Motion. (Patterson Aff. ¶¶ 2–4). A copy of the actual Fred Meyers CBA was not provided to the Plaintiff at any time prior to the request for continuance. After Plaintiff filed her Rule 56(f) Motion, however, Fred Meyers provided a copy of the CBA to Plaintiff and notified the Court of its production (Doc. # 28). Plaintiff did not base her Rule 56(f) Motion on the need for any other documents or information, and she filed a Response (Doc. # 30) to Fred Meyers' 12(c) Motion once Fred Meyers produced the CBA. Thus, the Court will deny as moot Plaintiffs Rule 56(f) Motion.

### III. FRED MEYERS' RULE 12(c) MOTION

On July 25, 2001, Fred Meyers filed its Rule 12(c) Motion. Assuming the truthfulness of all material facts alleged in Plaintiffs Second Amended Complaint and drawing all reasonable inferences in Plaintiffs favor, *see* Fed.R.Civ.P. 12(c) and *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989), the Court finds that Fred Meyers' Rule 12(c) Motion should be granted regarding Plaintiffs second through sixth causes of action. Plaintiff's

first cause of action, a Title VII sex discrimination claim, and her "eighth" cause of action, a breach of the duty of fair representation claim, remain unaffected by Fred Meyers' Rule 12(c) Motion.[4]

### A. Preemption Under Section 301 of the Labor Management Relations Act

In its Rule 12(c) Motion, Fred Meyers argues that Plaintiffs second through sixth causes of action are state law claims, preempted by Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185.[5] *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, Plaintiff correctly argues that a state law claim is only preempted by Section 301 where its resolution requires the *interpretation of,* as opposed to merely a *reference to,* a collective bargaining agreement. (Pl.'s Resp. at 2) (citing *Lingle v. Norge,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)) (emphasis added).

In *Cramer v. Consolidated Freightways Inc.,* 255 F.3d 683 (9th Cir.2001), the Ninth Circuit set forth the appropriate considerations for determining whether a state law claim *interprets* or merely *refers to* a collective bargaining agreement, which is dispositive of the preemption question.[6] In *Cramer,* the Ninth Circuit considered whether state law claims for invasion of privacy and intentional infliction of emotional distress were preempted under Section 301. The defendant employer had

4. In Plaintiff s Second Amended Complaint, there is no "seventh" cause of action even though there is a "sixth" and an "eighth" cause of action. Plaintiffs "eighth" cause of action for breach of the duty of fair representation will hereafter be considered as the "seventh" cause of action in the Second Amended Complaint.

5. Applying the 180–day statute of limitations for Section 301, Fred Meyers maintains that

Plaintiffs claims are time barred. The Court need not reach this issue because the state law claims will be dismissed on preemption grounds.

6. The *Cramer* opinion was amended on August 27, 2001, making two minor textual changes that do not affect the disposition of this case. 255 F.3d 683, 2001 U.S.App. LEXIS 19157 (9th Cir.2001).

placed video cameras and audio listening devices behind two-way mirrors in the restrooms to detect drug use by employees. The surveillance equipment was later discovered by an employee, The affected employees' work arrangement was governed by a collective bargaining agreement, which included provisions for the use of video surveillance.

Numerous employees, along with certain others affected by the surveillance, filed a class action in state court seeking damages and an injunction from further use of the surveillance equipment, The defendant employer removed the action to federal court and sought dismissal of all the state law claims under Section 301. The district court dismissed the state claims, finding that Section 301 preempted the claims.[7]

The Ninth Circuit disagreed with the district court's finding of Section 301 preemption and reversed, holding that the collective bargaining agreement could not have "contemplate[d] the surreptitious videotaping plaintiffs challenge[d] in their state law claims ... [because] § 301 does not grant the parties ... the ability to contract for what is illegal under state law." *Cramer*, 255 F.3d at 694–95. In attempting to clarify its position on the question of Section 301 preemption and narrowing the scope of preemption suggested by previous cases, the court reviewed *Allis–Chalmers, Lingle,* and *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). From these decisions, the court found the common

principle that a claim is not preempted by Section 301 where "the legal character of a claim [is] 'independent' of rights under the collective bargaining agreement ... [and] the bare fact that a collective bargaining agreement will be consulted" does not extinguish the claim. *Id.* at 690–91. The court noted that the "demarcation between preempted claims and those that survive § 301's reach is not ... a line that lends itself to analytical precision." *Id.* at 691. However, the court further explained that its analysis was intended to clarify existing United States Supreme Court precedent in order to "guide [courts and litigants] through the analytical thicket." *Id.*

[3] Where a claim involves the "employer's alleged failure to comport with its contractually established duties," it is preempted. *Id.* However, "if the claim may be litigated without reference to rights and duties established" in a collective bargaining agreement, it is not preempted. *Id.* Thus, "the plaintiffs claim is the touchstone for this analysis ... [and] the need to interpret the CBA must inhere in the nature of the plaintiffs claim." *Id.* The court was careful to distinguish a bona fide connection between the claim and the collective bargaining agreement and one where the link between the two was "creative" at best.[8] *Id.* at 692. The court adopted a standard that the argument for the connection "must reach a reasonable level of credibility." *Id.*

7. There were several members of the class who were not employees, and their claims were remanded because they were not subject to Section 301 preemption.

8. The majority characterized the assertions of the dissent as "strain[ing] credulity." The dissent's argument was characterized as asserting that, where the collective bargaining agreement included terms which permitted video surveillance, its silence on the use of

video cameras behind two-way mirrors could be read to suggest implied consent. Such a possibility, therefore, required interpretation of the collective bargaining agreement to determine whether implied consent was given under its terms. *Id.* at 692, n.3. The majority reasoned that, because the conduct was illegal and could not be contracted away, such an interpretation was clearly unnecessary. *Id.*

The *Cramer* court also limited the scope of several of its earlier, arguably more expansive, holdings. The Ninth Circuit's earlier jurisprudence suggested that Section 301 preempted anything that was "a properly negotiable subject" for collective bargaining, as well as anything that was a "working condition whether or not it is specifically discussed in the [collective bargaining agreement]." *Id.* at 692 (citing *Utility Workers of Am., Local No. 246 v. Southern Cal. Edison. Co.*, 852 F.2d 1083 (9th Cir.1988) and *Laws v. Calmat*, 852 F.2d 430 (9th Cir.1988)). The court indicated that such an expansive reading of the Section 301 preemptive power was contrary to the United States Supreme Court's caution in *Livadas* and *Lingle* against sweeping interpretations of Section 301.[9] *Id.* at 693.

■ The ultimate standard formulated by the *Cramer* court, in light of the narrowing of earlier Ninth Circuit case law, is that "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to *interpret* an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Id.* (emphasis added). The *Cramer* standard can be divided into four parts for use in determining whether a claim is preempted by Section 301. First, the claim must be brought under state law. Second, the claim must implicate an existing provision of the collective bargaining agreement. Third, the court must be required to *interpret*, as opposed to merely *refer to*, the collective bargaining agreement. Fourth, the interpretation of the claim must be reasonably relevant to the resolution of the dispute and not merely a

"creative linkage" bestowing preemption. *Id.* at 692, n. 3.

**B. Plaintiff's Causes of Action Preempted under Section 301**

**1. Plaintiff's second cause of action for violation of A.R.S. § 23–493**

■ In her second cause of action, Plaintiff alleges that Defendants violated A.R.S. § 23–493, which addresses employers' drug testing of employees. Fred Meyers correctly asserts that A.R.S. § 23–492.06 specifically shields an employer from liability where the employer initiates a drug testing policy in accordance with the statute. (Mot. at 3–4). The Plaintiff alleges, however, that the specific requirements set forth in A.R.S. § 23–493.04 were not met, and such a failure resulted in damages for loss of income and benefits. (SAC ¶¶ 2–3).

Section 23–493.10 provides that an employer who follows a drug testing policy negotiated as part of a collective bargaining agreement is entitled to "receive the full benefits of this article, even if that policy does not conform to all of the provisions of this article." Furthermore, section 23–493.08(c) indicates that "compliance with this article by employers is voluntary and no cause of action arises" where the employer's drug testing policy does not comply with the terms of section 23–493. The Court, however, need not reach the issue of whether this claim is viable under the terms of the cited provisions of the statute because it must be dismissed on preemption grounds.

Applying the *Cramer* standard for preemption, Plaintiffs second cause of action

---

9. The court did note that many of the same cases may have reached the correct result if they had applied the new standard. *Id.* at 696. The court also noted that such a determination was "irrelevant to the question before [it]" because the court found that any provision allowing video surveillance in restrooms was illegal, even if it were bargained for in a collective bargaining agreement. *Id.*

is clearly being brought under a state statute, and Article Three, subsection (p) of the Fred Meyers CBA adopts by reference the substance abuse policy of the employer.[10] Thus, the claim that Fred Meyers' managers violated this policy implicates the same provision of the Fred Meyers CBA. Next, the terms of Fred Meyers' substance abuse policy are binding on the parties and define the scope of the duties between Fred Meyers and Plaintiff with respect to drug testing. Even if section 23–493 provides a cause of action for violation of its terms, which is not apparent, the statute provides that the terms of a collective bargaining agreement will control where one exists.[11] Because the terms of section 23–493 allow a collective bargaining agreement drug testing policy to control, the claim that Defendants violated the statute in the administration of its drug testing policy requires *interpretation* of the Fred Meyers CBA. *See Cramer,* 255 F.3d at 693. Finally, such a violation is reasonably relevant to the determination of the claim because even the statute that Plaintiff argues should provide her relief defers to the substance abuse terms of the CBA. (SAC ¶¶ 52–56). Contrary to the facts in *Cramer,* not only are the actions in question under A.R.S. § 23–493 not independently illegal under state law, but the notes preceding the statute expressly indicate that the state favors drug testing and the implementation of drug testing programs because "[t]he abuse of illegal drugs ... is a matter of substantial public concern." A.R.S. § 23–493, Historical and Statutory Notes.

The Court will dismiss Plaintiffs second cause of action for violation of A.R.S. § 23–493 because the *Cramer* standard for preemption has been met.

**2. Plaintiff's third cause of action for breach of implied covenant of good faith and fair dealing and sixth cause of action for breach of contract**

Plaintiff argues, in her third and sixth causes of action, that Defendants breached duties of good faith and fair dealing and breached contracts with her. (SAC ¶¶ 57–66, 76–78). Plaintiff argues that a claim for breach of the covenant of good faith and fair dealing does not require interpretation of the Fred Meyers CBA because the common law elements for breach of the covenant of good faith are clear and require no reference to the CBA. (Pl.'s Resp. at 3). Regarding her breach of contract claim, Plaintiff argues that Defendants engaged in unfair labor practices. (*Id.* at 6).

Again, Ninth Circuit and United States Supreme Court precedent hold that claims which are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor agreement" are preempted by Section 301. *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904; *Cramer,* 255 F.3d at 689 (quoting *Allis–Chalmers* ). Furthermore, the United States Supreme Court precedent holds that federal common law preempts state contract law in the interpretation and enforcement of collective bargaining agreements. *See Textile Workers Union v. Lin-*

---

10. The parties have not provided a copy of Fred Meyers' substance abuse policy, but the Fred Meyers CBA specifically explains that the policy was set forth and adopted "as per previous agreement." Thus, the language of the substance abuse policy is incorporated into the Fred Meyers CBA.

11. The protections of the statute indicate that such collective bargaining agreements are "valid and enforceable, notwithstanding the provisions of the article." A.R.S. § 23–493.10. Thus, the statute provides additional liability protection where the employer, with a drug testing policy entered into by way of a collective bargaining agreement, follows an established drug testing policy.

*coln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In *International Brotherhood of Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), the Supreme Court pointed out that if state law "were allowed to determine the meaning of particular contract phrases or terms in a collective bargaining agreement... the 'parties would be uncertain as to what they were binding themselves to' in a collective bargaining agreement, and, as a result, 'it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate.' " *Id.* at 858, 107 S.Ct. 2161 (quoting *Allis–Chalmers,* 471 U.S. at 211).

The claims not dismissed as preempted in *Cramer* were held to be independent of the collective bargaining agreement because state law provided that such conduct was illegal and the collective bargaining agreement had no power to overcome this illegality. 255 F.3d at 697. However, the ability of parties to bargain for legally negotiable terms is well established, particularly in the collective bargaining process. *See NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); *Hollins v. Kaiser Found., Hosp.,* 727 F.2d 823 (9th Cir.1984). In *Allis–Chalmers,* the Court found a state law claim of bad faith in the payment of disability benefits preempted by Section 301. 471 U.S. at 202. Other Ninth Circuit cases have similarly held that contract claims were preempted. *See e.g., Harris v. Alumax Mill Prods.,* 897 F.2d 400 (9th Cir.1990)(covenant of good faith and fair dealing covered by collective bargaining agreement preempted); *Young v. Anthony's Fish Grottos,* 830 F.2d 993 (9th Cir. 1987) (breach of contract and good faith claims preempted by Section 301). Thus, unless there is an independent, illegal provision binding the parties, as in *Cramer,* or the terms of the collective bargaining agreement do not address the conduct in

question, contract claims arising out the collective bargaining agreement are clearly preempted by Section 301.

■ The *Cramer* standard applies to Plaintiffs third and sixth causes of action as follows: First, both the breach of the duty of good faith and fair dealing claim and the breach of contract claim are brought under state common law principles. Plaintiffs Second Amended Complaint clearly states that "the law of the state of Arizona implied a covenant of good faith and fair dealing." (SAC ¶ 58). The same language is incorporated by reference into the breach of contract claim. (Id.¶ 79).

Second, the claims not only implicate specific provisions of the Fred Meyers CBA, but implicate the *entire* Fred Meyers CBA. The substance of these claims must be determined by the very language of the Fred Meyers CBA and are inextricably intertwined with the entire agreement. This is clear despite Plaintiffs assertion that no interpretation of the Fred Meyers CBA is required. (Pl.'s Resp. at 3, 6). Indeed, Plaintiffs Second Amended Complaint belies this assertion because it cites the rule for duty of good faith as including good faith "in all matters related to the employment," fairness "in all matters related to employment," compliance with Defendant's own policies and rules, and termination only for cause. (SAC ¶ 58). Each of these duties, and the scope thereof, are defined by the express provisions of the Fred Meyers CBA.

Third, it is clear that *mere reference* to the Fred Meyers CBA will not provide sufficient information to determine the scope of the employment relationship in the contractual context. *See Cramer,* 255 F.3d at 693. Several examples of provisions which will require interpretation of the Fred Myers CBA before a determination of bad faith or breach of contract can

be reached are: (1) whether Plaintiffs conduct constituted sufficient "cause" for termination under the terms of the CBA; (2) whether the drug testing policies approved by the CBA were followed in the instant case; and (3) whether the CBA substance abuse policy provides for the type of questioning alleged in Plaintiffs Second Amended Complaint. The Court must explicitly *interpret* the Fred Meyers CBA to answer these questions, and the CBA provides a sufficient basis for a fair determination of these questions. Thus, this exercise would require more than a *mere reference* to the Fred Meyers CBA. *Id.*

Finally, the contract claims alleged against Defendants are fundamentally relevant to the resolution of the dispute on these claims because they find their entire existence in the Fred Meyers CBA.

The Court will dismiss Plaintiffs third and sixth causes of action because the *Cramer* standard for preemption has been met.

### 3. Plaintiffs fourth cause of action for invasion of privacy and fifth cause of action for intentional infliction of emotional distress

■ Plaintiff alleges in her fourth and fifth causes of action that Defendants violated her right to privacy and intentionally inflicted emotional distress upon her by requiring her to submit to a drug screening. (SAC ¶¶ 67–75). Plaintiff alleges that she was required to provide a urine sample and was subjected to a lengthy interview by Fred Meyers' managers that covered inappropriate and personally disturbing subjects. (*Id.* ¶ 71). In addition, Plaintiff alleges that these intrusions were conducted without proper notice or consent and with wanton disregard for any harm which might result from them. (*Id.* ¶ 73).

■ Arizona recognizes both invasion of privacy claims and claims for intentional

infliction of emotional distress. *See Savage v. Boies,* 77 Ariz. 355, 272 P.2d 349 (1954)(recognizing intentional infliction of emotional distress claim); *Reed v. Real Detective Pub. Co.,* 162 P.2d 133 (1945) (recognizing invasion of privacy claim). The test for the two is the same and is adopted from the standard set forth in the Restatement (Second) of Torts § 46, comment d:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*See Rutledge v. Phoenix Newspapers. Inc,* 148 Ariz. 555, 715 P.2d 1243, 1244 (1986); *Davis v. First Nat'l Bank,* 124 Ariz. 458, 605 P.2d 37 (1979); *Cluff v. Farmers Ins. Exch.,* 10 Ariz.App. 560, 460 P.2d 666 (1969) (incorporating requirements of claim for intentional infliction of emotional distress into action for invasion of privacy based upon intrusion into plaintiffs seclusion or solitude).

■ For two reasons, these causes of action provide no recourse for Plaintiff apart from those which might be provided to her within the provisions of the Fred Meyers CBA. First, in *Hart v. Seven Resorts, Inc.,* 190 Ariz. 272, 947 P.2d 846 (1997), the court held that though a broad right to privacy exists, "it applies only to intrusions by *the government* or where there is 'state action.'" *Id.* at 850–51 (emphasis in original). Thus, there must be state action for a cause of action of privacy infringement to exist under Arizona law. Second, in *Weller v. Arizona Department of Economic Security,* 176 Ariz. 220, 860 P.2d 487 (1993), the court held that though an employee discharged for a positive drug test may be entitled to unemployment benefits, the court did not intend its decision

to be read as "requiring employers to retain workers who abuse drugs. The Legislature has not precluded employers From terminating employees who use drugs either on or off the job." *Id.* at 491. Thus, there is not a per se rule in Arizona precluding drug-related terminations.

Therefore, if a cause of action lies for extreme and outrageous conduct related to the enforcement of the Fred Meyers substance abuse policy, it must arise from the terms of the Fred Meyers CBA. The court explained in *Weller* that, for purposes of drug testing in the employment relationship, "an employee agrees to abide by the rules of his employer as a condition of employment." 860 P.2d at 491. A claim, therefore, will lie only where the Fred Meyers CBA confers an expectation of a certain level of privacy or protection against extreme and outrageous conduct in implementing its substance abuse policy.

The *Cramer* standard applies to Plaintiff s fourth and fifth causes of action as follows: First, the intentional infliction of emotional distress and invasion of privacy claims are Arizona common law causes of action. (SAC ¶¶ 67, 72).

Second, the claims implicate the substance abuse policy of the Fred Meyers CBA. This is so because Defendants' conduct can only be deemed extreme and outrageous in the context of the procedure bargained for under the terms of the Fred Meyers CBA. Where the substance abuse policy contains a requirement that the employee submit to a random drug test (which Plaintiffs pleading suggests it does, *see* SAC ¶¶ 18–45), whether Defendants' conduct in the implementation of that procedure was extreme and outrageous can only be determined in the context of the substance abuse policy and procedures adopted by the Fred Meyers CBA. A suit alleging an extreme and outrageous violation of these bargained for procedures clearly implicates the substance abuse provisions of the Fred Meyers CBA.

Third, the Court will be required to interpret the terms of the substance abuse policy in the Fred Meyers CBA to determine whether the actions alleged by Plaintiff were extreme and outrageous in relationship to the procedures to which Plaintiff agreed under the terms of the CBA. More than a mere reference to the Fred Meyers CBA will be required in making such a determination.

Finally, the interpretation of the Fred Meyers CBA is not simply relevant to the resolution of the intentional infliction of emotional distress and invasion of privacy claims, but is fundamental to any determination in favor of either party. Without interpreting the terms of the Fred Meyers CBA, it will be impossible to determine if Defendants' conduct was extreme and outrageous in view of the substance abuse policy that was agreed to in the collective bargaining process. Furthermore, as is clear from the public policy statement in A.R.S. § 23–493, there is no illegality if union members, who are parties to a collective bargaining agreement, agree to abide by an employer's substance abuse policy.

The Court will dismiss Plaintiffs fourth and fifth causes of action because the *Cramer* standard for preemption has been met.

**IT IS THEREFORE ORDERED** that Plaintiffs Request for Leave of Court to Amend Complaint (Doc. # 16) is **GRANTED.** The Clerk of the Court is directed to file Plaintiff's Second Amended Complaint, which was lodged with the Court on July 27, 2001 when Plaintiff filed her Request for Leave of Court to Amend Complaint.

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Continue Plaintiffs Response to Defendant's Motion for Partial

Judgment on the Pleadings (Doc. # 19) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (Doc. # 15) is **GRANTED.**